*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| ROCKY L. ESTRADA, SR., STANLEY D. JOHNSON, and ALBERT M. KOOKESH, SR., | ) ) ) ) | Supreme Court No. S-15434 Court of Appeals No. A-10893 |

ROCKY L. ESTRADA, SR., )
STANLEY D. JOHNSON, and ) Supreme Court No. S-15434
ALBERT M. KOOKESH, SR., ) Court of Appeals No. A-10893
 )
    Petitioners, ) District Court Nos. 1AG-09-00030 CR,
 ) 1AG-09-00031 CR, and
 v. ) 1AG-09-00033 CR (Consolidated)
 )
STATE OF ALASKA, ) O P I N I O N
 )
    Respondent. ) No. 7062 – November 20, 2015
 )

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the District Court of the State of Alaska, First Judicial District, Angoon, David V. George, Judge.

Appearances: John M. Starkey, Landye Bennett Blumstein, LLP, Anchorage, for Petitioners. Lance B. Nelson, Senior Assistant Attorney General, Seth M. Beausang, Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Respondent. Robert T. Anderson, Seattle, Washington, for Amicus Curiae Alaska Federation of Natives.

Before: Fabe, Chief Justice, Stowers, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

BOLGER, Justice.

## I.    INTRODUCTION

A statewide regulation authorizes the Alaska Department of Fish and Game (the Department) to specify how many fish may be taken annually under a subsistence fishing permit.  Four Angoon fishermen challenged this regulation on various grounds after they were charged with taking more salmon than their permits allowed.  The district court agreed with their challenge and dismissed the charges.  The court of appeals reversed.  We conclude that these harvest limits are regulations that must comply with the Administrative Procedure Act (APA).  Because the Department promulgated these harvest limits without following the requirements of the APA, we reverse the court of appeals and reinstate the district court judgments dismissing these charges.

## II.    FACTS AND PROCEEDINGS

The Kanalku Lake sockeye run has long been a source of subsistence fishing for the residents of Angoon.  In the years 2001 through 2005, the harvest limit for Kanalku sockeye was 25.  In 2001 the Department first assessed the health of this run and determined that the fish harvest was unsustainably high given the low escapement level.[1]  Angoon residents informally agreed to a voluntary moratorium on fishing for the 2002 season, and resumed the moratorium in 2004.  But the Department, after concluding that the voluntary moratorium had been ineffective, wrote in 2006 to Angoon community leaders, informing them that "[t]he annual [harvest] limit for Kanalku [would] . . . be reduced from 25 to 15 sockeye salmon."  In May 2007 the Department issued a news release noting that the sockeye possession and harvest limit for Kanalku sockeye would remain at 15.

---

[1]    " '[E]scapement' means the annual estimated size of the spawning salmon stock."  5 Alaska Administrative Code (AAC) 39.222(f)(10) (2014).

Rocky Estrada, Scott Hunter,[2] Stanley Johnson, and Albert Kookesh were arrested on Admiralty Island, along the shore of Kanalku Bay, in July 2009 for taking more sockeye salmon than their subsistence fishing permits allowed. Each permit had an annual subsistence harvest limit of 15 sockeye for the Kanalku fishery, and the four individuals had collectively harvested 148. Estrada, Johnson, and Kookesh (the fishermen) were charged under 5 AAC 01.015(b)(1), which provides that "the numbers of fish taken for subsistence use may not exceed the limits set out in the permit."[3]

The fishermen moved to dismiss the charges, arguing that 5 AAC 01.015 was invalid. Citing Alaska's subsistence statute, AS 16.05.258, the fishermen contended that the Board could set harvest limits only through the adoption of regulations in compliance with the APA.[4] Since the harvest limit had not been promulgated in accordance with the APA, the fishermen argued that it could not form the basis for their prosecution.

The district court agreed. First, the court looked to the indicia of when an agency action constitutes a "regulation," as defined in the APA.[5] Noting that the harvest limit "makes subsistence fishing restrictions specific, subjects any contrary use to

---

[2]    Hunter was initially charged with violating the catch limit on his permit, but this charge was later amended to fishing without a permit. He is not a party to this petition for hearing.

[3]    5 AAC 01.015(b)(4) provides that "the permit may designate the species and number of fish to be harvested." *See also* 5 AAC 01.730(e) (providing that in the Southeastern Alaska Area, the Department may establish possession limits on subsistence salmon fishing permits "if resources are limited relative to anticipated harvest levels," and that "the [D]epartment may not set any possession limit which jeopardizes the sustained yield of a stock").

[4]    AS 44.62.010-.950.

[5]    *See* AS 44.62.640(a)(3).

prosecution, and affects the public's use of the resource," the court concluded that the harvest limit was a regulation. After looking to the Board's authorizing statute[6] and the subsistence statute,[7] the court also concluded that "the Legislature has charged the Board [with] adopt[ing] regulations if it wishes to establish [catch] limits." Accordingly, the court dismissed the charges against the fishermen.

The State appealed, and the court of appeals reversed.[8] The court of appeals did not address whether the harvest limit was a "regulation" as defined by the APA.[9] Rather, the court of appeals identified the question as whether the legislature gave the Board "authority to enact regulations that . . . authorize the Department to impose terms or conditions on [fishing] permits that restrict harvest levels."[10] In considering this question, the court of appeals concluded that the Board's interpretation of its authorizing statute was entitled to deference, and should therefore be upheld so long as it "appear[ed] to be a reasonable interpretation of the disputed law."[11] In addition, the court reasoned that the legislature had "ample opportunity to learn" of the Board's regulations but had

---

[6]    *See* AS 16.05.251(a)(3) ("The Board of Fisheries may adopt regulations it considers advisable in accordance with AS 44.62 (Administrative Procedure Act) for . . . setting quotas, bag limits, harvest levels, and sex and size limitations on the taking of fish . . . .").

[7]    *See* AS 16.05.258.

[8]    *See State v. Estrada*, 315 P.3d 688, 694 (Alaska App. 2013).

[9]    *Id*. at 692.

[10]    *Id*.

[11]    *Id*. at 694.

never "intervened by amending the pertinent authorizing statutes."[12] The court of appeals therefore held that 5 AAC 01.015 "was a valid exercise of the Board's authority" and that the fishermen were required to adhere to the harvest limit specified in their subsistence fishing permits.[13]

The fishermen filed a petition for hearing, arguing that the court of appeals applied the wrong standard of review and misinterpreted the relevant statutes. We granted the petition in full.

## III. STANDARD OF REVIEW

We exercise our independent judgment when we review the court of appeals' decision on a petition for hearing.[14] We also exercise our independent judgment to determine whether agency action is a regulation for purposes of the APA.[15] "We interpret . . . Alaska law according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters."[16] We apply a "sliding scale" approach to statutory interpretation: "the plainer the language of the statute, the more convincing any contrary legislative history must be."[17]

## IV. DISCUSSION

The fishermen argue that the harvest limits set by the Department must be promulgated as regulations in compliance with the APA. Under the Board's authorizing

---

[12]   *Id*.

[13]   *Id*.

[14]   *State v. Hodari*, 996 P.2d 1230, 1232 (Alaska 2000).

[15]   *Kachemak Bay Watch, Inc. v. Noah*, 935 P.2d 816, 825 (Alaska 1997).

[16]   *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999).

[17]   *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991); *accord State, Div. of Workers' Comp. v. Titan Enters*., 338 P.3d 316, 320 (Alaska 2014).

statute, any "regulations" must indeed be adopted in compliance with the APA.[18] The APA defines "regulation" in part as

> every rule, regulation, order, or standard *of general application* or the amendment, supplement, or revision of a rule, regulation, order, or standard adopted by a state agency to implement, interpret, or make specific the law enforced or administered by it, or to govern its procedure, except one that relates only to the internal management of a state agency . . . .[19]

Although this definition is "broad,"[20] "it does not encompass every agency practice or decision."[21] "Indicia of a 'regulation' include: (1) whether the practice implements, interprets[,] or makes specific the law enforced or administered by the state agency, and (2) whether the practice affects the public or is used by the agency in dealing with the public."[22]

In *Jerrel v. State, Department of Natural Resources*, we explained that "[t]he label an agency places on a policy or practice does not determine whether that rule falls under the APA; the legislature intended for the term 'regulation' to encompass a variety of statements made by agencies. Rather, we look to the character and use of the

---

[18]     *See* AS 16.05.251(a) ("The Board of Fisheries may adopt regulations it considers advisable in accordance with AS 44.62 (Administrative Procedure Act) . . . .").

[19]     AS 44.62.640(a)(3) (emphasis added).

[20]     *Alyeska Pipeline Serv. Co. v. State, Dep't of Envtl. Conservation*, 145 P.3d 561, 573 (Alaska 2006).

[21]     *Kachemak Bay Watch, Inc. v. Noah*, 935 P.2d 816, 825 (Alaska 1997).

[22]     *Id*.

policy or rule."[23]  Therefore, we must independently determine whether an annual subsistence fishing harvest limit constitutes a "regulation" under the APA.

In *Jerrel* we invalidated an agency rule requiring that markings on livestock be visible from a distance of 20 feet because the rule was a regulation not adopted in compliance with the APA.[24]  The agency argued that the rule was an "informal 'policy rule,' "[25] elaborating on a regulation that allowed the agency to "require that . . . livestock be tagged, dyed, or otherwise marked"[26] and a statute that established ownership in livestock if the animal was "branded or marked so that the brand or mark shows distinctly."[27]  We noted that the 20-foot rule met "both core characteristics of a regulation"[28]:  it was used "to interpret, make specific, and implement [a] statutory requirement,"[29] and it was used "not as an internal guideline but rather as a tool in dealing with the public."[30]  Both of these "core characteristics of a regulation" are present in this case: setting the harvest limit at 15 fish made specific a statutory requirement, and the limit was used as a tool in dealing with, and indeed criminally prosecuting, the public.

---

[23]   999 P.2d 138, 143 (Alaska 2000) (footnotes omitted).

[24]   *Id*. at 145.

[25]   *Id*. at 143.

[26]   *Id*. at 142 (quoting 11 AAC 60.070).

[27]   *Id*. (quoting AS 03.40.020) (internal quotation marks omitted).

[28]   *Id*. at 143.

[29]   *Id*.

[30]   *Id*. at 143-44 (footnote omitted).

Similarly, in *State v. Tanana Valley Sportsmen's Ass'n*, we held that the Alaska Board of Game had improperly altered the criteria it applied in its permitting decisions by issuing the alteration via verbal instructions to its agents.[31] In evaluating AS 16.05.255 (the statute that empowers the Board of Game to adopt regulations in the same way AS 16.05.251 empowers the Board of Fisheries[32]), we noted that the Board of Game's actions in "the setting of quotas . . . must be in accordance with the [APA]."[33] We held that because the APA does not allow agencies to impose requirements by oral instruction, "such verbal additions to regulations involving requirements of substance are unauthorized and unenforceable."[34] The APA similarly does not allow agencies to circumvent its requirements for promulgating regulations by imposing "requirements of substance" through a permitting process.

The State argues that *Brigman v. State* is a better analogy to this case.[35] In *Brigman*, the court of appeals considered whether the Department was required to follow the APA in establishing a brown bear permit hunt area.[36] The court reasoned that, although an area grid applying to all individuals wishing to hunt brown bears in that

---

[31]    *See* 583 P.2d 854, 855 (Alaska 1978).

[32]    *Compare* AS 16.05.255 (authorizing the Board of Game to make regulations for specified purposes that "it considers advisable in accordance with [the APA]"), *with* AS 16.05.251 (authorizing the Board of Fisheries to make regulations for specified purposes that "it considers advisable in accordance with [the APA]").

[33]    *Tanana Valley*, 583 P.2d at 858.

[34]    *Id*.

[35]    64 P.3d 152 (Alaska App. 2003).

[36]    *Id*. at 155.

management unit was a rule " 'of general application,' "[37] the area did not "govern or restrict hunters' activities in the same manner as" other rules governing bear hunts.[38] After analyzing the relevant case law, the court ultimately concluded that the hunt area was not a "regulation" under the APA.[39]

In *Brigman*, the court of appeals reasoned that the permit-hunt boundaries were not regulations "because they [did] not govern or restrict hunters' activities in the same manner as the rules that . . . specify the hunting season, or restrict the type of transportation or weapon that hunters may use, or that prohibit the killing of animals of a particular size or sex."[40] But we conclude that the harvest limit in this case "restricts [the fishermen's] activities" in a way that is similar to these archetypal regulations because the limit adds specific, concrete content to the general rule.

The *Brigman* court relied on *Kachemak Bay Watch*, *Inc. v. Noah*, in which we determined that a similar system of districts was not a regulation in part because it "[did] not alter the rights of the parties, [and did] not deprive any party of a fair opportunity for public participation."[41] In this case, however, setting harvest limits clearly alters the rights of the parties with respect to how many fish they may harvest.

---

[37]     *Id*. at 159 (quoting AS 44.62.640(a)(3)).

[38]     *Id*. at 159-60.

[39]     *Id*. at 161.

[40]     *Id*. at 159-60.

[41]     *Id*. at 161 (quoting *Kachemak Bay Watch, Inc. v. Noah*, 935 P.2d 816, 825 (Alaska 1997)).

In *Kachemak Bay Watch*, we also noted that the district identification process was "the *first* step in a lengthy, detailed public process,"[42] and that subsequent steps in that process would themselves be subject to the APA.[43] Here, when the Department set out the harvest limits on the fishermen's permits, that was the *last* step in a process that at no point provided for the public participation that is required by the APA.

The State also attempts to distinguish *Jerrel*, arguing that the marking requirement at issue in that case was not set out in either the regulation or the Jerrels' lease. Here, on the other hand, the harvest limit was displayed on the permit itself, giving notice of the limit to the fishermen. This distinction does not alter our conclusion. In *Jerrel*, the general marking requirement *was* set out in the regulation.[44] The 20-foot visibility requirement added substantive, specific content to that general requirement rather than simply enforcing it.

So too here, the regulations relating to subsistence fishing harvest limits contain general requirements — that "the numbers of fish taken for subsistence use may not exceed the limits set out in the permit,"[45] and that the Department may set limits by permit that do not "jeopardize[] the sustained yield of a stock."[46] The decision to set a 15-fish harvest limit for Kanalku sockeye does not simply implement these general requirements, but makes them specific and brings them to bear on the public. However

---

[42]   *Kachemak Bay Watch*, 935 P.2d at 826 (emphasis added).

[43]   *Id*.

[44]   *Jerrel v. State, Dep't of Natural Res.*, 999 P.2d 138, 142 (Alaska 2000).

[45]   5 AAC 01.015(b)(1).

[46]   5 AAC 01.730(e)(4).

the public received notice of that limit — whether by reading and signing their permits, or by receiving a letter from the agency as in *Jerrel*[47] — it has the "core characteristics of a regulation,"[48] and as such must be promulgated in accordance with the APA.

The parties do not dispute that the Department did not comply with the APA when adopting harvest limits. The APA requires, among other things, the publication of public notice, containing specific information, prior to the adoption of a regulation;[49] it also requires a formal opportunity for the public to comment on proposed regulatory action.[50] Here, the 15-fish limit was first announced *after* it was adopted, in a letter the Department sent to Angoon community leaders.

The State argues that the manner in which the harvest limits were adopted does not offend the purposes of the APA, because the fishermen had notice of the limits and because the Department informally consulted with Angoon community leaders and residents before adopting the limits. Even were this true, it is not relevant to our analysis. Because we have concluded that the harvest limits are, in fact, regulations, they must do more than satisfy the underlying purposes of the APA; they must also satisfy its formal requirements. The Board should have complied with the APA in establishing the 15-fish harvest limit, and because it did not, the district court acted correctly when it dismissed these charges.[51]

---

[47] *See Jerrel*, 99 P.2d at 140.

[48] *Id*. at 143.

[49] AS 44.62.190.

[50] AS 44.62.210.

[51] Because we find that the harvest limits should have been adopted in accordance with the APA, we do not reach the other questions briefed by the parties.

## V. CONCLUSION

We REVERSE the court of appeals' decision, and reinstate the district court's judgment of dismissal.