*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ALASKA PUBLIC DEFENDER AGENCY, | ) ) | |
| | ) | Supreme Court No. S-16983 |
| | ) | Court of Appeals No. A-12814 |
| Petitioner, | ) | |
| | ) | Superior Court No. 4SM-16-00002 DL |
| v. | ) | |
| | ) | O P I N I O N |
| SUPERIOR COURT, | ) | |
| | ) | No. 7413 – October 11, 2019 |
| Respondent. | ) | |
| | ) | |

Petition for Hearing from the Court of Appeals of the State of Alaska, on appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Dwayne W. McConnell, Judge.

Appearances: Kelly R. Taylor, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Petitioner. David A. Wilkinson, Assistant Attorney General, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for Intervenor State of Alaska, Department of Health and Social Services, Division of Juvenile Justice. Notice of nonparticipation filed by Jeffrey W. Robinson, Ashburn & Mason, P.C., Anchorage, for Respondent.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

MAASSEN, Justice.

## I.    INTRODUCTION

A juvenile from a small village could not afford to travel to the site of his juvenile delinquency proceeding.  His attorney with the Public Defender Agency (the Agency) filed a motion asking the superior court to require the Division of Juvenile Justice (DJJ) to pay the travel expenses for both the juvenile and one of his parents.  The superior court denied the motion and required the Agency to pay the expenses.  The court of appeals upheld the superior court's decision, reasoning that the Agency's authorizing statute could plausibly be interpreted to cover client travel expenses and that this reading was supported by administrative guidance in the form of two Attorney General opinions and a regulation governing reimbursements by the Office of Public Advocacy (OPA).

We granted the Agency's petition for hearing, asking the Agency and DJJ to address two questions:  (1) whether the Agency has a statutory obligation to pay its clients' travel expenses and (2) whether DJJ has a statutory obligation to pay those expenses.  We conclude that neither entity's authorizing statutes require the payment and therefore reverse the decision of the court of appeals.  We do not address the question of how these necessary expenses are to be funded; that is an issue for the executive and legislative branches.

## II.    FACTS AND PROCEEDINGS

In 2013 M.T., a juvenile from Hooper Bay, faced delinquency charges scheduled for an adjudication trial in Bethel, 167 miles away and not reachable from Hooper Bay by road.[1]  M.T. and his parents could not afford to pay for travel to the trial

---

[1]    *See* Alaska R. Crim. P. 18 (listing presumptive trial sites for Alaskan communities); Transportation Geographic Information Section, ALASKA DEP'T OF TRANSP. & PUB. FACILITIES, Distance Between Cities on Map, DISTANCEFROMTO,
(continued...)

site, so his Agency attorney filed a motion asking the superior court to order DJJ to pay the travel expenses of both M.T. and one of his parents. The superior court granted the motion in part, ordering DJJ to pay M.T.'s travel expenses but not his father's; the court ruled that M.T.'s travel expenses constituted a "court cost" that DJJ was required to pay under its authorizing statute, AS 47.12.120(e).

The court of appeals reversed the superior court's ruling in an unpublished order.[2] Relying on the legislative history of AS 47.12.120(e), the court of appeals concluded that the statute "does not obligate" DJJ to pay M.T.'s travel expenses.[3]

In 2016 another indigent juvenile, I.M. from Pilot Station, was facing delinquency charges scheduled for an adjudication trial in Bethel, 90 miles away and not connected to Pilot Station by road.[4] The superior court invited briefing from the Agency, DJJ, OPA, the Alaska Court System, and the Department of Law on two questions: (1) if "neither a minor nor the minor's parents" can pay for their travel to the presumptive trial site, "is the State obligated to fund travel and per diem for the minor? For a parent?" and (2) if yes, "which particular agency should bear that expense, and why?"

The government entities agreed that the State was obligated to pay the travel expenses for both the minor and a parent, but they disagreed as to which of them bore that financial burden. The superior court held that it was DJJ. The court reasoned that it would be inappropriate for the Court System to bear the costs when the juvenile

---

[1] (...continued) http://dot.alaska.gov/stwdplng/mapping (search for "Bethel" and "Hooper Bay").

[2] *State v. M.T.*, Nos. A-11942/11961 (Alaska App. Order, July 24, 2014).

[3] *Id.*

[4] *See* Transportation Geographic Information Section, *supra* note 1 (search for "Bethel" and "Pilot Station").

was not represented by an attorney appointed by the court under Alaska Administrative Rule 12(e). It decided that the Agency and OPA were not responsible because their enabling statutes "do not encompass travel and per diem for the minor's or a parent's attendance at the adjudication in a delinquency case, unless the minor or the parent is called as a witness by appointed counsel." The court then looked to two Attorney General opinions, DJJ's broad statutory duty to provide due process to juvenile offenders and their parents, and the semantic truism that " 'costs' means costs" to conclude that DJJ was responsible for paying the travel expenses.

This brings us to the present case. In 2016 J.B. was a juvenile living in Marshall, another small village in western Alaska, facing delinquency charges for a third-degree assault. Bethel, the presumptive site for his adjudication trial, is 73 miles away and not connected to Marshall by road.[5] Because J.B.'s family was indigent, his Agency lawyer moved for an order requiring DJJ or the court to pay the trial-related travel expenses for J.B. and one of his parents. The superior court denied the motion. Relying on the court of appeals' order in *State v. M.T.*,[6] the court held that DJJ was not responsible for the travel expenses because they are not "court costs" that DJJ is required by statute to pay. The court concluded instead that the Agency was responsible because of its statutory obligation to pay "the cost of representation," supporting this conclusion by reference to the obligations of OPA, which has a similar statutory mandate and an implementing regulation that specifically authorizes reimbursements to appointed

---

[5]    *See* Transportation Geographic Information Section, *see supra* note 1 (search for "Bethel" and "Marshall").

[6]    Nos. A-11942/11961 (Alaska App. Order, July 24, 2014).

attorneys for "necessary travel and per diem by the defendant."[7] The court also cited Delinquency Rule 1(e), adopting Criminal Rule 17(b), which requires that the entity providing legal representation to an indigent defendant pay necessary witness fees.

The Agency filed an original application in the court of appeals, asking that the superior court's order be reversed, and DJJ intervened. The court of appeals affirmed the superior court's order.[8] The court reasoned that it was plausible to interpret the Agency's authorizing statute as requiring that "the cost of transporting the defendant to the site of their trial is a necessary 'service' or 'facility' of the representation" for which the Agency must pay.[9] The court of appeals acknowledged, however, that this was "by no means the only possible interpretation of the statute," and it therefore looked to other sources to resolve any textual ambiguity.[10] It interpreted the two Attorney General opinions mentioned above as stating the Department of Law's conclusion "that when a criminal defendant or a juvenile delinquency defendant is represented at public expense by the Public Defender Agency, the Agency is responsible for paying the defendant's necessary transportation costs."[11] The court reasoned that the OPA regulation authorizing payment of a defendant's travel expenses indicated that "the Department of

---

[7] 2 Alaska Administrative Code (AAC) 60.040 (2019).

[8] *Alaska Pub. Defender Agency v. Superior Court*, 413 P.3d 1221, 1223 (Alaska App. 2018).

[9] *Id.* at 1222.

[10] *Id.*

[11] *Id.*

Administration apparently agrees with (or at least has acquiesced in) the position taken by the Attorney General."[12]

The court concluded that "[b]ecause all three parties to this case agree that *some* government entity should be responsible for paying [these transportation costs], this case does not present a question of criminal law or procedure. Rather, it presents issues of budgeting and finances — i.e., administrative questions."[13] The court therefore "accord[ed] substantial weight to the statutory interpretation adopted by the Attorney General and the Department of Administration."[14] The court held that the agency "representing an indigent defendant who is (1) not in custody and who is (2) unable to afford to travel to the site of their trial . . . shall pay the necessary expense" of the juvenile defendant, as well as that of a parent in the case of "a minor who is not reasonably able to travel alone."[15]

The court of appeals recognized "that [its] decision may have significant financial consequences for the Public Defender Agency and the Office of Public Advocacy — just as a different decision might have significant financial consequences for the Court System or the Division of Juvenile Justice. But this is a situation where *having* an answer is arguably more important than the specific content of the answer."[16]

---

[12]     *Id.* at 1222-23.

[13]     *Id.* at 1223 (emphasis in original).

[14]     *Id.*

[15]     *Id.*

[16]     *Id.* (emphasis in original).

The court noted that it is for the legislature to fund the agencies at sufficient levels to accommodate these expenses.[17]

The Agency filed a petition for hearing, which we granted. We asked the parties to brief whether either the Agency or DJJ is "required by statute to pay the travel expenses for indigent juveniles who are unable to afford to travel to the site of their adjudication hearings."[18] We did not require the Court System to participate in the appeal, and it chose not to.

## III. STANDARD OF REVIEW

"We exercise our independent judgment when we review the court of appeals' decision on a petition for hearing."[19] Questions of statutory interpretation and constitutional issues are questions of law to which we apply our independent judgment.[20] "We interpret the Alaska Constitution and Alaska Statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of

---

[17]     *Id.*

[18]     Subsequent events have mooted this case as to J.B., but we decide the case under the public interest exception to the mootness doctrine. *See In re Hospitalization of Tracy C.*, 249 P.3d 1085, 1090 (Alaska 2011) ("Whether the public interest exception [to the mootness doctrine] applies depends on three factors: '(1) whether the disputed issues are capable of repetition, (2) whether the mootness doctrine, if applied, may cause review of the issues to be repeatedly circumvented, and (3) whether the issues presented are so important to the public interest as to justify overriding the mootness doctrine.' " (quoting *Wetherhorn v. Alaska Psychiatric Inst.*, 156 P.3d 371, 380-81 (Alaska 2007))).

[19]     *Estrada v. State*, 362 P.3d 1021, 1023 (Alaska 2015).

[20]     *Eberhart v. Alaska Pub. Offices Comm'n*, 426 P.3d 890, 894 (Alaska 2018); *Hendricks-Pearce v. State, Dep't of Corr.*, 323 P.3d 30, 35 (Alaska 2014).

the law as well as the intent of the drafters.' "[21] " '[A]n agency's interpretation of a law within its area of jurisdiction can help resolve lingering ambiguity, particularly when the agency's interpretation is longstanding.' "[22]

## IV. DISCUSSION

"When determining a statute's meaning, we consider three factors: 'the language of the statute, the legislative history, and the legislative purpose behind the statute.' "[23] " 'We decide questions of statutory interpretation on a sliding scale': '[T]he plainer the language of the statute, the more convincing any contrary legislative history must be . . . to overcome the statute's plain meaning.' "[24]

### A. The Agency Is Not Required By Statute To Pay The Expenses For An Out-Of-Custody Indigent Juvenile To Travel To The Site Of An Adjudication Hearing.

In AS 18.85.100, Alaska's Public Defender Act describes the rights of indigent persons "to representation, services, and facilities." Under subsection (a) of the statute, a covered person "is entitled (1) to be represented . . . by an attorney to the same extent as a person retaining an attorney is entitled; and (2) to be provided with the necessary services and facilities of this representation, including investigation and other

---

[21] *Grimm v. Wagoner*, 77 P.3d 423, 427 (Alaska 2003) (quoting *Native Vill. of Elim v. State*, 990 P.2d 1, 5 (Alaska 1999)).

[22] *Hendricks-Pearce*, 323 P.3d at 35 (quoting *Bartley v. State, Dep't of Admin., Teacher's Ret. Bd.*, 110 P.3d 1254, 1261 (Alaska 2005)).

[23] *Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Commerce*, 414 P.3d 630, 634 (Alaska 2018) (quoting *Oels v. Anchorage Police Dep't Emps. Ass'n*, 279 P.3d 589, 595 (Alaska 2012)).

[24] *Id.* (alterations in original) (first quoting *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011); then quoting *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)).

preparation."[25]   In subsection (b), the statute states that "the attorney services and facilities and the court costs shall be provided at public expense to the extent that the person, at the time the court determines indigency, is unable to provide for payment without undue hardship."[26]  Persons covered by the statute include juveniles "entitled to representation under the Supreme Court Delinquency . . . Rules."[27]

### 1.     The language of AS 18.85.100(a) and (b) does not appear to impose the costs of client travel on the Agency.

The first question we must answer is whether any of the statutory terms describing what is to "be provided at public expense" — i.e., by the Agency[28] — include travel costs.  We construe the statute's subsections "so as to produce a harmonious whole."[29]  We assume, therefore, that "the attorney services and facilities" to be publicly funded under AS 18.85.100(b) are the same "necessary services and facilities of this representation, including investigation and other preparation," named in the immediately preceding subsection (a)(2).  And "this representation" to which subsection (a)(2) refers is the representation "by an attorney" stated in the immediately preceding subsection

---

[25]     AS 18.85.100(a).

[26]     AS 18.85.100(b).

[27]     AS 18.85.100(a).  Alaska Delinquency Rule 16 addresses the right to counsel.  *See also A.A. v. State*, 538 P.2d 1004, 1005 (Alaska 1975) ("A juvenile's right to counsel in a delinquency proceeding has been clearly established in this jurisdiction.").

[28]     *See Alaska Legal Servs. Corp. v. Thomas*, 623 P.2d 342, 344 (Alaska 1981) ("The plain meaning of the words 'at public expense' as used in AS 18.85 is that either the public defender agency will pay the attorney's fees if it hires private counsel for a defendant, or the court system will pay if it appoints the private counsel.  In any case, it is the state that pays.").

[29]     *Ward v. State, Dep't of Pub. Safety*, 288 P.3d 94, 99 (Alaska 2012) (quoting *Forest v. Safeway Stores, Inc.*, 830 P.2d 778, 781 (Alaska 1992)).

(a)(1) — which is to be provided "to the same extent as" it would be to "a person retaining an attorney."

DJJ does not contend that privately retained attorneys assume responsibility for their clients' travel costs as a general matter; the Agency's payment of indigent clients' travel costs would not be payment to "the same extent as a person retaining an attorney *is entitled*" but rather beyond it.[30] DJJ contends, however, that the necessary services and facilities of Agency representation must include travel costs because attendance at trial "facilitate[s] access to counsel and engagement in [the] defense." While that is true, the right to attend trial is derived from the constitutional rights of confrontation and due process, not the right to counsel.[31] The right exists as much for unrepresented as represented defendants; it is not a concomitant of the representation.

We also cannot interpret the phrase "court costs"[32] as encompassing the expense of the indigent juvenile's travel. "Court costs" are not defined in the

---

[30] *Cf.* Alaska R. Prof. Conduct 1.8(e) ("A lawyer shall not provide financial assistance to a client in connection with pending or contemplated litigation, except that . . . a lawyer representing an indigent client *may* pay court costs and expenses of litigation on behalf of the client." (emphasis added)).

[31] *See Douglas v. State*, 214 P.3d 312, 319 (Alaska 2009) ("The right of a criminal defendant to be present at every stage of trial is rooted in the right to confront adverse witnesses and the right to due process of law." (internal citation omitted)); *RLR v. State*, 487 P.2d 27, 42 (Alaska 1971) ("We see no difference in principle between the child's right to be present at his hearing and a criminal defendant's right to be present at his trial."); *see also P.H. v. State*, 504 P.2d 837, 842 n.14 (Alaska 1972) ("The right of confrontation applies to children's proceedings in which the child is charged with misconduct for which he may be incarcerated."), *superseded by statute on other grounds*, Ch. 63, §§ 13, 15, SLA 1977, *as recognized In The Matter of F.S.*, 586 P.2d 607, 610 (Alaska 1978).

[32] AS 18.85.100(b).

delinquency statutes.[33] "In the absence of a [statutory] definition, we construe statutory terms according to their common meaning[;] [d]ictionaries 'provide a useful starting point' " for this exercise.[34] For a definition of "court costs," Black's Law Dictionary directs the reader to a particular definition of "costs": "The charges or fees taxed by the court, such as filing fees, jury fees, courthouse fees, and reporter fees."[35] The expense of a party's travel to court is generally not a cost that could be included in those "taxed by the court" against the other party, and the legislature is therefore unlikely to have intended "court costs" to include the defendant's travel; DJJ agrees with this interpretation.

DJJ also argues, however, that in determining the costs to be borne by the Agency we should be guided by the Public Defender Act's definitions of "indigent person" and "expenses." DJJ observes that the Act defines "indigent person," in part, as one who lacks the "means to provide for payment of an attorney and all other necessary expenses of representation,"[36] and that it defines "expenses," "when used with reference to representation," to include "an expense of investigation, other preparation,

---

[33]    *See* AS 18.85.170 (defining other terms used in AS 18.85).

[34]    *Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Commerce*, 414 P.3d 630, 635 (Alaska 2018) (quoting *Alaskans For Efficient Gov't, Inc. v. Knowles*, 91 P.3d 273, 276 n.4 (Alaska 2004)).

[35]    *Court Costs, Cost definition 2*, BLACK'S LAW DICTIONARY (11th ed. 2019); *see Kuretich v. Alaska Trustee, LLC*, 287 P.3d 87, 92 (Alaska 2012) (noting trial court's view that " 'court costs' are defined 'more broadly than costs incurred in court' and 'include costs that would be recoverable under [Alaska Civil] Rule 79,' " and rejecting argument that "costs that commonly attend a non-judicial foreclosure — e.g., recording fees and the cost of title searches —" could be "court costs" because they are not costs "obtained by the prevailing party in a court proceeding").

[36]    AS 18.85.170(4).

*and trial."*[37] DJJ argues that, when these statutes are read together, the Agency should be required to pay all "necessary expenses that cannot be paid due to indigence," including the cost of traveling to the trial location (which DJJ labels "an expense of . . . trial").

But even if the definition of "expenses" is read broadly enough to include travel expenses, the Act does not impose those expenses on the Agency. The legislature did not use the word "expenses" anywhere in the Act except in its definition of "indigent person."[38] The legislature used different and more precise terms when describing what the Agency had to provide "at public expense": "attorney services and facilities and . . . court costs."[39] "[W]hen the legislature uses certain language in one part of the statute and different language in another, the court assumes different meanings were intended."[40] A person's inability to afford the expense of travel to the trial location may be an indication that the person is an "indigent person" as defined in the statute, but that does not mean that the Agency is required to pay that expense; the legislature chose to describe the Agency's obligations more narrowly.

---

[37]     AS 18.85.170(3) (emphasis added).

[38]     *See* AS 18.85.170(4).

[39]     AS 18.85.100(b); *see also* AS 18.85.100(a)(2) (addressing "necessary services and facilities of this representation, including investigation and other preparation").

[40]     2A NORMAN J. SINGER & SHAMBIE SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 46:06, at 261 (7th ed. 2014); *see Rubey v. Alaska Comm'n on Postsecondary Educ.*, 217 P.3d 413, 416 n.9 (Alaska 2009) (recognizing principle that "[d]ifferent words used in the same, or a similar, statute are assigned different meanings whenever possible").

### 2. Legislative history and purpose do not support imposing the costs of client travel on the Agency.

To determine whether we should read meaning into the statutory language that is not apparent from the language itself, we next look at the legislative history and purpose.[41] We find no clear indication there that the legislature intended the Agency to pay its clients' travel costs. The relevant language of AS 18.85.100 is essentially unchanged since the Agency's creation in 1969.[42] At that time, the House Judiciary Committee report explained that the purpose of the bill was "to assure needy defendants of adequate legal representation and to more equitably distribute the public obligation to provide this representation."[43] The report expressed concern that indigent persons' constitutional right to counsel was currently being supported "almost entirely by the members of the legal profession alone" and that the bill would both "reliev[e] the legal profession of this unique burden" and "establish a more efficient and more uniformly, highly skilled and specialized representation system, comparable to the services of the district attorneys' offices."[44] A later report prepared by the Alaska Judicial Council largely confirmed that these purposes underlay the Agency's creation.[45]

---

[41] *See Alaska Ass'n of Naturopathic Physicians v. State, Dep't of Commerce*, 414 P.3d 630, 634 (Alaska 2018).

[42] *See* Ch. 109, SLA 1969.

[43] 1969 House Journal 220.

[44] *Id*.

[45] ALASKA JUDICIAL COUNCIL, THE ALASKA PUBLIC DEFENDER AGENCY IN PERSPECTIVE 3-22 (1974), http://www.ajc.state.ak.us/publications/docs/research/PDPer1969-74.pdf (relating persistent concerns with system of assigning and paying private attorneys to represent criminal defendants).

The language of the Public Defender Act closely mirrored that of the 1966 Model Defense of Needy Persons Act, drafted by the National Conference of Commissioners on Uniform State Laws.[46] Commenting on the Model Act's analog to AS 18.85.100, the drafters explained that their intent was to "make[] clear that the criminal defendant is entitled to all the necessary elements of adequate representation."[47] The Model Act as a whole was not intended "to codify the other aspects of a constitutionally adequate criminal procedure . . . [but rather was] confined to equipping the needy person with necessary defensive facilities."[48] The Model Act clarified that indigent defendants are entitled to a defense equivalent to that of "persons of adequate means," and that, "to the extent that [the indigent defendant] is unable to pay for it, he is entitled to have it paid for by the state."[49]

The Agency's brief describes the establishment and early funding of the Agency, relying primarily on the Alaska Judicial Council's 1974 report.[50] The Agency highlights early consideration of the expenses of *attorney* travel, particularly as Agency offices were initially proposed for only four Alaska cities with a mandate to serve clients statewide. But the Agency points out that — with one apparently anomalous exception

---

[46]     *Compare* Ch. 109, SLA 1969, *and* ALASKA JUDICIAL COUNCIL, at Appendix IV, *with* Reed Dickerson, *Model Defense of Needy Persons Act*, 4 Harv. J. Legis. 3, 8 (1966).

[47]     Dickerson, *supra* note 46, at 9.

[48]     *Id.* at 5.

[49]     *Id.*

[50]     *See* ALASKA JUDICIAL COUNCIL, *supra* note 45.

in 1971[51] — there is no legislative discussion of the costs of *client* travel in the context of Agency funding. DJJ also discusses the Agency's basis in the Model Act and the Model Act's "broad purpose of providing and funding an 'adequate defense,' " but notably it directs us to no cases that define "adequate defense" as broadly as it asks us to or that otherwise read the Model Act as requiring public defenders to pay their clients' travel costs. We see no indication in the Alaska Public Defender Act's source material, nor in the legislature's reliance on it, that the legislature intended the "necessary services and facilities of . . . representation" to include Agency-funded transportation of the client to the trial location.

###### 3. Attorney General opinions and OPA regulations do not require imposing the costs of client travel on the Agency.

The court of appeals, having found AS 18.85.100 ambiguous, turned for guidance to two Attorney General opinions and an OPA regulation, and DJJ relies on those materials as well in urging us to hold that the transportation obligation belongs to the Agency. The court of appeals decided that because this case presents "issues of budgeting and finances — i.e., administrative questions," the statutory interpretations adopted by the Attorney General and the Department of Administration (which includes both the Agency and OPA)[52] should be "accord[ed] substantial weight."[53] We conclude

---

[51]    In 1971 the Agency was allocated $10,000 for a "pilot program" to pay transportation expenses for indigent clients, released on bail, to return home pending trial. ALASKA JUDICIAL COUNCIL, *supra* note 45, at 43. By statute, the obligation to return out-of-custody defendants to the place of arrest generally falls on other State agencies. *See* AS 33.30.081(b)-(c) ("The commissioner of corrections shall make available return transportation to the place of arrest for a prisoner who is released from custody in a state correctional facility. . . . [and] for a prisoner who is released from custody before admission to a state correctional facility.").

[52]    *Department of Administration Divisions*, ALASKA DEP'T OF ADMIN.,
(continued...)

that none of these materials are particularly relevant, however, and we therefore give them little weight.

### a.      The 1977 and 1978 Attorney General opinions

"The weight accorded to opinions of the Attorney General is largely within our discretion.  In general, they are not controlling but are entitled to some deference."[54] The amount of deference to be given depends in large part on the opinion's relevance.

In 1977, to resolve a "long standing dispute" between the Department of Public Safety and the Department of Health and Social Services' Division of Corrections, the Attorney General sent an opinion letter to both departments' commissioners addressing when the obligation to transport criminal defendants arises and which government agency must respond when it does.[55]  The opinion contained three sections. The first discussed the transportation of in-custody prisoners to and from court; the Attorney General concluded that the Department of Public Safety was obligated to

---

[52]      (...continued)
http://www.doa.alaska.gov/divisions.html (last visited Aug. 19, 2019).

[53]      *Alaska Pub. Defender Agency v. Superior Court*, 413 P.3d 1221, 1223 (Alaska App. 2018).

[54]      *State v. Dupier*, 118 P.3d 1039, 1050 n.62 (Alaska 2005); *see also Basey v. State, Dep't of Pub. Safety, Div. of Alaska State Troopers, Bureau of Investigations*, 408 P.3d 1173, 1179 n.44 (Alaska 2017) ("Attorney General's opinions, while not controlling, are entitled to some deference in matters of statutory construction." (quoting *Bullock v. State, Dep't of Cmty. & Reg'l Affairs*, 19 P.3d 1209, 1216 (Alaska 2001))).

[55]      STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., 1977 WL 22018, at *1 (Oct. 7, 1977).  The Agency notes that it was only tangentially involved in this dispute and was not one of the letter's designated recipients.  *See id.* at *4 ("[W]e have taken the liberty of forwarding a copy . . . to the Public Defender.").

provide transportation in those circumstances.[56] The second section discussed transportation for released prisoners back to their place of arrest.[57] The Attorney General concluded that an inter-agency agreement between Public Safety and Corrections — splitting the transportation burden between the two departments depending on whether the individual had been sentenced — did not logically follow the statutory framework.[58] The Attorney General concluded that Corrections should provide transportation to individuals released from Corrections' custody, and that Public Safety should provide transportation to individuals released from its custody without having entered the correctional system.[59]

The third section of the 1977 opinion addressed the transportation to court of persons who had been in custody but had been released. The Attorney General concluded that earlier court orders requiring Public Safety or Corrections to pay their transportation costs were "inappropriate" and that neither agency was "responsible for the cost of any transportation not necessitated by or incidental to any present or prior custody."[60] The Attorney General further concluded that "[i]f the individual [was] represented by the Public Defender Agency . . . and if the expense [was] a necessary incident of representation, then any necessary transportation expenses that may properly

---

[56] *Id.* at *1-2.

[57] *Id.* at *2-3.

[58] *Id.* at *2.

[59] *Id.* at *2-3.

[60] *Id.* at *3.

be authorized at public expense should be paid by the Public Defender Agency pursuant to AS 18.85.100."[61]

In 1978, the Attorney General issued a "supplement" to the 1977 opinion, addressing its application to juveniles.[62] The supplemental opinion was a response to a question from a judge who had released a juvenile defendant from custody because the Division of Corrections was unable to transport him to court and the Department of Public Safety refused to do so.[63] The Attorney General opined that "[w]hile a juvenile could arguably be considered a 'prisoner'. . . the general duty of [Public Safety] to transport prisoners . . . is in this case superseded by the specific duty of the commissioner of health and social services [DJJ] with respect to juveniles under AS 47.10."[64] The Attorney General further concluded that Public Safety was secondarily responsible for transportation in such situations if the Department of Health and Social Services was unavailable, to avoid a repeat of the incident that prompted the opinion.[65] The Attorney General continued, "[T]he advice given in the [1977 opinion] with regard to the ability of the executive branch to effectuate policy changes through inter-agency agreement also applies to juvenile transportation responsibility."[66] The 1978 opinion thus explicitly addressed only the transportation of persons in custody (the first section of the 1977 opinion); it did not discuss the obligation to transport out-of-custody juveniles, nor did

---

[61]    *Id.*

[62]    STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., 1978 WL 18588, at *1 (Sept. 25, 1978).

[63]    *Id.* at *1-2.

[64]    *Id.* at *1.

[65]    *Id.*

[66]    *Id.*

it fully adopt the reasoning of the 1977 opinion in the juvenile context, explaining only that it was a "follow-up" and "supplement" to that opinion.[67]

Ultimately, we disagree with the court of appeals' reliance on the two Attorney General opinions as proof of the Department of Law's view "that when a criminal defendant or a juvenile delinquency defendant is represented at public expense by the Public Defender Agency, the Agency is responsible for paying the defendant's necessary transportation costs."[68] First, the 1977 opinion did not actually conclude that the Agency is responsible for such costs; the Attorney General said only that the costs "may properly be" paid by the Agency "if the expense is a necessary incident of representation" — a condition the Attorney General did not purport to decide.[69] Second, the 1978 supplement did not expressly extend to juveniles the earlier opinion's limited statements about transporting out-of-custody defendants to trial; the supplement's scope was limited to "prisoners."[70]

We conclude that the two Attorney General opinions are at most only tangentially relevant to the issue before us and should not influence our interpretation of the governing statutory language.

### b.      OPA regulation 2 AAC 60.040

The court of appeals also relied on an OPA regulation, 2 AAC 60.040, to conclude that "the Department of Administration apparently agrees with (or at least has

---

[67]      *Id.*

[68]      *Alaska Pub. Defender Agency v. Superior Court*, 413 P.3d 1221, 1222 (Alaska App. 2018).

[69]      STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., 1977 WL 22018, at *3 (Oct. 7, 1977).

[70]      STATE OF ALASKA, DEP'T OF LAW, OP. ATT'Y GEN., 1978 WL 18588, at *1 (Sept. 25, 1978).

acquiesced in) the position taken by the Attorney General — the position that the payment of transportation expenses is a necessary incident of a public agency's representation of its clients if those clients are not in custody."[71]  The Department of Administration adopted 2 AAC 60.040 under the authority of OPA's authorizing statute, AS 44.21.410.  Under the heading "[e]xtraordinary expenses," it authorizes the reimbursement of "necessary travel and per diem by the defendant" incurred by contract attorneys under certain circumstances.[72]

By its terms, the regulation does not apply to OPA staff attorneys, much less Agency staff attorneys, and it labels such expenses "extraordinary," not routine.  The Agency suggests several "extraordinary" situations in which client travel may be necessary to the representation:  to meet with an expert witness, to "visit a location relevant to the case," or to "review discovery that the attorney is not permitted to send to the client."  OPA has apparently never interpreted the regulation or its authorizing statute as requiring or even permitting it to pay travel expenses for OPA's indigent clients to attend court proceedings.[73]  We agree with the Agency that the OPA regulation, like the two Attorney General opinions, does not support requiring the Agency to pay its clients' travel costs.

---

[71]     *Alaska Pub. Defender Agency*, 413 P.3d at 1223.

[72]     2 AAC 60.040 (2019).  This regulation is part of a section of OPA regulations regarding private contract attorneys, that is, attorneys appointed by the court under Alaska Administrative Rule 12(b)(1)(B).  *See* 2 AAC 60.010-.060.

[73]     *See Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014) ("We give more deference to agency interpretations that are 'longstanding and continuous.' " (quoting *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011))).

**B.** **Like The Agency, DJJ Is Not Required By Statute To Pay The Expenses For An Out-Of-Court Indigent Juvenile To Travel To The Site Of An Adjudication Hearing.**

DJJ's payment obligations in this context are also defined by statute. Alaska Statute 47.12.120(e) provides: "The department shall pay all court costs incurred in all proceedings in connection with the adjudication of delinquency under this chapter, including hearings that result in the release of the minor."[74]  We conclude that the legislature's choice of language — "court costs" — does not require DJJ to pay for an out-of-custody juvenile defendant's travel expenses.

The delinquency statutes, like the Public Defender Act, do not define "court costs."[75]  As explained above in our discussion of the Public Defender Act,[76] "court costs" may reasonably be interpreted to include such things as filing fees, court reporter fees, and other costs of the sort that are sometimes taxed by the court against a party.[77] We see no indication in the statutory language that the phrase "court costs" should be interpreted any more expansively in the delinquency statutes than it is in the Public Defender Act.

---

[74]     The "department" referred to is the Department of Health and Social Services; DJJ is the departmental division that manages juvenile delinquency.  *See* AS 47.12.990(5); *Division of Juvenile Justice*, ALASKA DEP'T OF HEALTH & SOC. SERVS., http://dhss.alaska.gov/djj/Pages/default.aspx (last visited Aug. 19, 2019).

[75]     *Cf.* AS 47.12.990.

[76]     *See supra* Part IV.A.1.

[77]     *Court Costs, Cost definition 2*, BLACK'S LAW DICTIONARY (11th ed. 2019).

This reading of "court costs" as used in AS 47.12.120(e) is supported by legislative history.[78] The Territorial government enacted the original payment provision for the juvenile system in 1943.[79] The codified version of the 1943 Act required that "the proper and necessary costs of the court and witnesses and other expenses necessarily incurred in enforcement of this chapter shall be borne by the Department of Public Welfare."[80] This provision covered the entire juvenile system, including both delinquent children and dependent children — those now termed children in need of aid.[81]

In 1957 the Territorial legislature reorganized the juvenile justice system. It created a new Department of Juvenile Institutions, leaving only the care of dependent children to the Department of Public Welfare.[82] While the section regarding the Department of Public Welfare retained the earlier-codified language nearly word for word as it pertains to the care of dependent children,[83] a new provision for delinquent children was added, requiring "[t]he Department of Juvenile Institutions [to] pay all court

---

[78]    The court of appeals in *State v. M.T.* relied on the legislative history to find that AS 47.12.120(e) did not require DJJ to pay the travel expenses. Nos. A-11942/11961 (Alaska App. Order, July 24, 2014).

[79]    Ch. 8, § 19, SLA 1943, codified as § 51-3-19 Alaska Compiled Laws Annotated (ACLA) (1949).

[80]    § 51-3-19 ACLA (1949).

[81]    See § 51-3-3 ACLA regarding the juvenile jurisdiction of the courts.

[82]    Ch. 145, Arts. II, III, SLA 1957.

[83]    *Compare* Ch. 145, Art. III, § 4, SLA 1957, codified as § 51-3-64 ACLA (Supp. 1958), *with* § 51-3-19 ACLA (1949).

costs incurred in all proceedings in connection with the adjudication of delinquency under this Act, including hearings which result in the release of the minor."[84]

When the Alaska Legislature first codified the Territorial laws regarding the juvenile system in 1962, it retained the 1957 language. Former AS 47.10.080(h) (1962) required the Department of Health and Welfare[85] to pay "all court costs" in adjudications of delinquency while former AS 47.10.260 (1962), relating to the care of dependent children, required payment of "the proper and necessary costs of the court and witnesses and other expenses necessarily incurred." The only further change to these statutes was a renumbering in 1996.[86]

Although there are no legislative statements of intent relevant to the 1957 change, the Territorial legislature clearly narrowed the expenses covered by DJJ's predecessor for juvenile delinquents while retaining the broader language for cases involving the care of dependent children. Under the circumstances, we construe these provisions together.[87] The phrase "all court costs" in the delinquency statute appears to

---

[84]     Ch. 145, Art. I, § 10(2), SLA 1957, codified as § 51-3-30(2) ACLA (Supp. 1958) (alteration omitted).

[85]     The newly created Department of Health and Welfare contained both the Territory's Department of Juvenile Institutions and its Department of Public Welfare. *See* Ch. 64, § 12, SLA 1959.

[86]     Ch. 59, §§ 46-47, 55, SLA 1996; *compare* former AS 47.10.080(h) (1962), *and* former AS 47.10.260 (1962), *with* AS 47.12.120(e), *and* AS 47.14.130. The only alteration is that the relevant state department is now called the Department of Health and Social Services. *See* AS 47.12.990(5); AS 47.14.990(6).

[87]     "Under the *in pari materia* canon of statutory construction, we construe statutory provisions 'enacted at the same time, or deal[ing] with the same subject matter' together." *Mat-Su Valley Med. Ctr., LLC v. Bolinder*, 427 P.3d 754, 769 (Alaska 2018) (quoting *Bullock v. State, Dep't of Cmty. & Reg'l Affairs*, 19 P.3d 1209, 1214-15 (Alaska (continued...)

have been narrowed from the "costs of . . . witnesses and other expenses necessarily incurred" included in AS 47.14.130. Just as the legislature's addition of the phrase "and other expenses necessarily incurred" in Chapter 8, § 19, SLA 1943 was presumably deliberate, so too was the legislature's removal of the phrase in the delinquency statutes. We conclude that AS 47.12.120(e), the only juvenile delinquency statute addressing DJJ's payment obligations, does not require that it pay the travel expenses of an out-of-custody juvenile defendant to attend trial.

The Agency further argues that DJJ should be required to pay these costs because it has an obligation to ensure due process and fair legal proceedings. Alaska Statute 47.12.010(b)(9) states that one of the purposes of the juvenile justice system is to "provide due process through which juvenile offenders, victims, parents, and guardians are assured fair legal proceedings during which constitutional and other legal rights are recognized and enforced." But this purpose, like the others listed in the statute,[88] is a broad aspiration for the juvenile justice system as a whole, which includes not only DJJ but also the Department of Public Safety, the Court System, and the Agency. While the defendant's right to appear at a criminal proceeding is partially

---

[87]    (...continued)
2001)). The canon *expressio unius est exclusio alterius*, which "establishes the inference that, where certain things are designated in a statute, all omissions should be understood as exclusions," *Ranney v. Whitewater Eng'g*, 122 P.3d 214, 218 (Alaska 2005) (quoting *Croft v. Pan Alaska Trucking, Inc.*, 820 P.2d 1064, 1066 (Alaska 1991)), can also be applied when construing two provisions of the same act. *Cf. Alaska State Comm'n for Human Rights v. Anderson*, 426 P.3d 956, 964 (Alaska 2018) (declining to use the canon as a comparison tool for "two completely separate statutory schemes"); *see also Russello v. United States*, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section *of the same Act*, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (emphasis added)).

[88]    *See* AS 47.12.010.

grounded in due process,[89] AS 47.12.010(b)(9) does not create an obligation on DJJ in particular to pay whatever is necessary to guarantee that right.

## V.    CONCLUSION

Because neither DJJ's nor the Agency's authorizing statutes can be interpreted to require either of them to pay the travel expenses for out-of-custody indigent juvenile defendants to attend their delinquency proceedings, neither is legally obligated to pay such costs.  The task of pinpointing a source of payment is for the legislative or executive branches.

We REVERSE the decision of the court of appeals.

---

[89]    *See Douglas v. State*, 214 P.3d 312, 319 (Alaska 2009) ("The right of a criminal defendant to be present at every stage of trial is rooted in the right to confront adverse witnesses and the right to due process of law." (internal citation omitted)); *RLR v. State*, 487 P.2d 27, 42 (Alaska 1971) ("We see no difference in principle between the child's right to be present at his hearing and a criminal defendant's right to be present at his trial.").