IN RE OF ESTATE OF LILLIAN M. TVRZ, DECEASED.
SANDRA TVRZ, PERSONAL REPRESENTATIVE OF THE ESTATE
OF LILLIAN M. TVRZ, DECEASED, APPELLANT,
V. AUGUST T. "TED" TVRZ ET AL., APPELLEES.
620 N.W. 2d 757

Filed January 5, 2001.    No. S-98-1127.

Douglas W. Hand, of Frey & Hand Law Offices, for appellant.

Don Stenberg, Attorney General, Royce N. Harper, and Gerald W. Pankonin, Special Assistant Attorney General, for appellee State.

WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In its disposition of this appeal from a judgment of the county court for Lancaster County, the Nebraska Court of Appeals held, as a matter of first impression, that the State of Nebraska's claim against an estate for recovery of medical assistance benefits pursuant to Neb. Rev. Stat. § 68-1036.02 (Reissue 1996) arose at or after death of the recipient of such benefits and was therefore governed by the limitations provision of Neb. Rev. Stat. § 30-2485(b)(2) (Reissue 1995). *In re Estate of Tvrz*, 9 Neb. App. 98, 608 N.W.2d 226 (2000). The State of Nebraska, through the Department of Health and Human Services Finance and Support (DHHS), has petitioned for further review, citing cases from other jurisdictions holding that statutory claims of this nature arose prior to death when the benefits were received. We granted the petition for further review because we deem this legal issue to be one of significant public interest.

## BACKGROUND

The pertinent facts are undisputed. Lillian M. Tvrz died testate in Lancaster County, Nebraska, on January 2, 1998, at the age of 88. From August 1993 until February 1997, she received medical assistance payments (Medicaid) from the State of Nebraska, administered by DHHS pursuant to Neb. Rev. Stat. § 68-1018 et seq. (Reissue 1996 & Supp. 1997).

On February 6, 1998, Sandra Tvrz filed an "Application for Informal Probate of Will and Informal Appointment of Personal Representative" in the county court for Lancaster County,

Nebraska. On the same day, the registrar issued a written "Registrar's Statement of Informal Probate" and named Sandra as the personal representative of Lillian's estate. Claim day was designated as April 17, 1998, and notice was scheduled for publication on February 17 and 24 and March 3. Pursuant to Neb. Rev. Stat. § 25-520.01 (Reissue 1995), the personal representative mailed notice to parties she believed had a direct legal interest in the proceeding, but did not mail notice to DHHS.

Sharon Butts, a DHHS employee whose duties included estate recovery, read the published notice of claim day in a legal newspaper and prepared a claim against the estate in the amount of $79,955.01, representing the aforementioned medical assistance benefits which the State had paid to Lillian. Butts mailed the claim to the Lancaster County Court on April 14, 1998, but for an unknown reason, it was never received by the court. When Butts discovered on July 13 that the claim was not on file with the court, she then refiled the claim, and DHHS filed a "Petition for Allowance of Claim" on July 21, 1998. In response, the personal representative filed a "Notice of Disallowance of Claim" and an answer asserting the claim was untimely.

Following a hearing, the county court determined that because notice had not been mailed to DHHS, the claim was timely filed within 3 years after the death of the decedent pursuant to § 30-2485(a)(2). The personal representative then perfected this appeal. The Court of Appeals reversed, and remanded with directions to disallow the claim as untimely. It reasoned that because § 68-1036.02 created a claim against the *estate* of the recipient of medical assistance benefits, the claim necessarily arose at or after the recipient's death and therefore could only be filed within 4 months thereof pursuant to § 30-2485(b)(2).

## ASSIGNMENT OF ERROR

In DHHS' petition for further review, it contends that the Court of Appeals erred in holding that its claim against the estate was not timely filed.

## SCOPE OF REVIEW

In connection with questions of law and statutory interpretation, an appellate court has an obligation to reach an inde-

pendent conclusion irrespective of the decision made by the court below. *Snyder v. EMCASCO Ins. Co.*, 259 Neb. 621, 611 N.W.2d 409 (2000); *Zoucha v. Henn*, 258 Neb. 611, 604 N.W.2d 828 (2000).

## ANALYSIS

Medicaid is a joint federal-state program which provides medical assistance and other benefits to qualified recipients. It was established by title XIX of the Social Security Act of 1965. See Social Security Amendments of 1965, Pub. L. No. 89-97, 79 Stat. 286 (1965). Nebraska and other states accepting federal Medicaid funds are required to designate a single state agency to administer and supervise the program. See 42 U.S.C. § 1396a(a)(5) (1994). As noted above, DHHS administers the Medicaid program in Nebraska pursuant to § 68-1018 et seq.

In order to qualify for federal funds, state Medicaid programs must meet certain requirements, including compliance with federal statutes governing estate recovery programs which permit a state to recoup benefits paid from a recipient's estate under certain circumstances. 42 U.S.C. § 1396a(a)(18). Courts and commentators have discussed the purpose of estate recovery statutes. For example, the California Supreme Court has observed that estate recovery programs serve the purpose of permitting a state to assist those in need, while easing the financial burden of doing so by recouping benefits from a recipient's estate, thereby preventing heirs of the recipient "from unfairly benefitting [sic] from the program." *Kizer v. Hanna*, 48 Cal. 3d 1, 6, 767 P.2d 679, 681, 255 Cal. Rptr. 412, 414 (1989). The Minnesota Supreme Court has characterized the Medicaid estate recovery program as a means "whereby money paid to qualified individuals for health care purposes may be recovered and reused to help other similarly situated persons." *In re Estate of Turner*, 391 N.W.2d 767, 770 (Minn. 1986). A commentator has noted that "[t]he foremost consideration behind estate recovery is the reduction of the overall cost of Medicaid to states by recouping some portion of Medicaid expenditures." Jon M. Zieger, *The State Giveth and the State Taketh Away: In Pursuit of a Practical Approach to Medicaid Estate Recovery*, 5 Elder L.J. 359, 374 (1997).

Although each state is free to design its own statutory estate recovery program, such statutes must comply with the requirements of 42 U.S.C. § 1396p, which provides in pertinent part:

**(b) Adjustment or recovery of medical assistance correctly paid under a State plan**

(1) No adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan may be made, except that the State shall seek adjustment or recovery of any medical assistance correctly paid on behalf of an individual under the State plan in the case of the following individuals:

. . . .

(B) In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate, but only for medical assistance consisting of—

(i) nursing facility services, home and community-based services, and related hospital and prescription drug services, or

(ii) at the option of the State, any items or services under the State plan.

. . . .

(2) Any adjustment or recovery under paragraph (1) may be made only after the death of the individual's surviving spouse, if any, and only at a time—

(A) when he has no surviving child who is under age 21, or (with respect to States eligible to participate in the State program established under subchapter XVI of this chapter) is blind or permanently and totally disabled, or (with respect to States which are not eligible to participate in such program) is blind or disabled as defined in section 1382c of this title[.]

As noted, the estate recovery provisions of Nebraska's Medicaid plan are codified at § 68-1036.02. In complying with the federal requirements, § 68-1036.02 provides in part:

(1) The estate of a decedent who has received medical assistance benefits under the medical assistance program established under section 68-1018 shall be indebted to the'

Department of Health and Human Services Finance and Support for the total amount paid for medical assistance on behalf of the decedent if:

(a) The decedent was fifty-five years of age or older at the time the medical assistance was provided; or

(b) The decedent resided in a medical institution and, at the time of institutionalization or application for medical assistance, whichever is later, the department determines that the decedent could not have reasonably been expected to be discharged and resume living at home. For purposes of this section, medical institution shall mean a skilled nursing facility, intermediate care facility, intermediate care facility for the mentally retarded, nursing facility, or inpatient hospital.

(2) No debt to the department shall exist if the decedent is survived (a) by a spouse or (b) by a child who either is under twenty-one years of age or is blind or totally and permanently disabled as defined by the Supplemental Security Income criteria.

We are presented with two competing theories regarding when claims arise under § 68-1036.02 for the purposes of this state's nonclaim statute, § 30-2485. DHHS urges us to conclude that such claims arise before the death of the recipient, and as such, under § 30-2485(a)(1), it has 3 years to file a claim when it has not been presented with the required notice. In contrast, the Court of Appeals determined that such claims arise " 'at or after' the death" of the recipient, thus making the claim subject to the 4-month limitations period set forth in § 30-2485(b)(2). *In re Estate of Tvrz*, 9 Neb. App. 98, 104, 608 N.W.2d 226, 230 (2000). We review this question of law de novo.

DHHS relies heavily upon *Matter of Estate of Hooey*, 521 N.W.2d 85 (N.D. 1994), a case which it cites for the first time in its brief in support of the petition for further review. In that case, the Supreme Court of North Dakota determined that a claim under that state's estate recovery statute arose prior to the recipient's death and therefore could be filed within 3 years after death pursuant to a limitations provision similar to § 30-2485(a)(2). The North Dakota estate recovery statute provided in pertinent part:

> On the death of any recipient of medical assistance who was fifty-five years of age or older when the recipient received the assistance, and on the death of the spouse of the deceased recipient, the total amount of medical assistance paid on behalf of the recipient following the recipient's fifty-fifth birthday must be allowed as a preferred claim against the decedent's estate . . . .

N.D. Cent. Code § 50-24.1-07(1) (1999). The statute further provided:

> No claim must be paid during the lifetime of the decedent's surviving spouse, if any, nor while there is a surviving child who is under the age of twenty-one years or is blind or permanently and totally disabled, *but no timely filed claim may be disallowed because of the provisions of this section.*

(Emphasis supplied.) N.D. Cent. Code § 50-24.1-07(2). The court reasoned that although the ability of the state to enforce the obligation to repay benefits was tolled during the recipient's lifetime, the obligation arose upon the receipt of benefits and thus arose prior to death.

In reaching this conclusion, the North Dakota Supreme Court relied on *Department of Public Welfare v. Anderson*, 377 Mass. 23, 384 N.E.2d 628 (1979). *Anderson* involved the issue of whether a Medicaid recovery claim arose prior or subsequent to the death of the recipient for limitations purposes. The Massachusetts estate recovery statute interpreted by the court provided:

> "There shall be no adjustment or recovery of medical assistance correctly paid, except from the estate of an individual who was sixty-five years of age or older when he received such assistance, and then only after the death of his surviving spouse, if any, and only at a time when he has no surviving child who is under age twenty-one or is blind or permanently and totally disabled."

*Anderson*, 377 Mass. at 24, 384 N.E.2d at 630. The Supreme Judicial Court of Massachusetts concluded that this statutory language did not contemplate a claim arising after death, but, rather, one arising during the recipient's lifetime but subject to provisions delaying the state's enforcement right. The court concluded that the purpose of the statutory language was "simply to

avoid imposition of an obligation to repay while the recipient or certain members of his family may yet require governmental assistance, and not to prevent the obligation from ever coming into existence." *Id.* at 31-32, 384 N.E.2d at 634.

As noted above, however, the Medicaid estate recovery statutes enacted by various states are not identical. Whether a claim under § 68-1036.02 arises before or after the death of a Medicaid recipient depends upon the statutory language used by the Nebraska Legislature. In construing a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *Big John's Billiards v. Balka, ante* p. 702, 619 N.W.2d 444 (2000); *Sack v. State*, 259 Neb. 463, 610 N.W.2d 385 (2000). Likewise, a court must attempt to give effect to all parts of a statute, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, and unambiguous out of a statute. *Pfizer v. Lancaster Cty. Bd. of Equal., ante* p. 265, 616 N.W.2d 326 (2000); *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue*, 259 Neb. 24, 607 N.W.2d 857 (2000).

Applying these familiar principles, the Court of Appeals determined that the plain and unambiguous language of § 68-1036.02 imposed an obligation upon the estate of a Medicaid recipient but created "no indebtedness so long as the recipient is alive." *In re Estate of Tvrz*, 9 Neb. App. 98, 104, 608 N.W.2d 226, 230 (2000). This reasoning is supported by that of the California Supreme Court in *Kizer v. Hanna*, 48 Cal. 3d 1, 767 P.2d 679, 255 Cal. Rptr. 412 (1989), in which the court concluded that California's Medicaid estate recovery statute could not be applied retroactively to permit recovery of benefits received prior to its enactment. The California statute in question was similar to § 68-1036.02, providing in part:

> "[T]he department may claim against the estate of the decedent, or against any recipient of the property of that decedent by distribution or survival an amount equal to the payments for the health care services received. The department may not claim where the eligible person was under 65 when services were received, or where there is a sur-

viving spouse, or where there is a surviving child who is under age 21 or who is blind or permanently and totally disabled[.] . . ."

*Kizer*, 48 Cal. 3d at 4 n.2, 767 P.2d at 680 n.2, 255 Cal. Rptr. at 413 n.2. The court held:

> The plain language of the statute dictates that the Department's right to reimbursement is against the recipient's *estate*. Consequently, the Department's right to reimbursement arises, if at all, at the time of the recipient's death and is dependent on conditions existing at such time.
>
> Equally clear from the language of [the California statute] is the fact that no liability to reimburse the Department arises until the Medi-Cal recipient's death.

(Emphasis in original.) *Kizer*, 48 Cal. 3d at 8, 767 P.2d at 683, 255 Cal. Rptr. at 416. The court concluded that the payment of "Medi-Cal" benefits did not create a debt because the department can seek reimbursement only after the recipient's death and then only if the conditions mentioned in the statute are met. *Id.*

We conclude that this reasoning is sound and applicable to the language of § 68-1036.02. Moreover, in contrast to the North Dakota statute examined in *Matter of Estate of Hooey*, 521 N.W.2d 85 (N.D. 1994), we find no language in § 68-1036.02 describing a claim which is in existence but held in abeyance during the lifetime of the recipient. Unlike the North Dakota statute, the Nebraska statute focuses on one point in time, i.e., the death of the recipient, and requires a determination of whether the recipient's estate is obligated to reimburse DHHS as of that point. The statute specifically provides that "[n]o debt to the department shall exist" if the recipient is survived by a spouse or by a child who is under the age of 21, blind, or totally and permanently disabled. § 68-1036.02(2). Thus, under this statutory scheme, the *existence* of indebtedness on the part of a recipient's estate depends upon factors which can be determined only after the recipient's death.

Based upon our independent review of the plain and unambiguous language of § 68-1036.02, we conclude that the reimbursement claim at issue in this case arose at or after the death of Lillian and was therefore subject to the limitations imposed in § 30-2485(b)(2). Since the claim was presented to the per-

sonal representative more than 4 months after the death of Lillian, it was time barred.

## CONCLUSION

For the reasons discussed, we conclude that the Court of Appeals did not err in determining that a Medicaid reimbursement claim under § 68-1036.02 necessarily arises at or after the death of the Medicaid recipient and that the claim at issue here was not filed within the applicable limitations period. We therefore affirm the judgment of the Court of Appeals which reversed, and remanded to the county court with directions to disallow the claim as untimely.

AFFIRMED.

HENDRY, C.J., not participating.