*Notice: This opinion is subject to correction before publication in the Pacific Reporter. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In the Matter of the Estate of ) | |
| ) | Supreme Court Nos. S-18380/18450 |
| FE PEREZ ABAD ) | (Consolidated) |
| ) | |
| _____ ) | Superior Court No. 3KO-20-00057 PR |
| ) | |
| In the Matter of the Estate of ) | O P I N I O N |
| ) | |
| SANDRA LEE BOATNER ) | No. 7678 – December 22, 2023 |
| ) | |
| _____ ) | Superior Court No. 4FA-20-00520 PR |

Appeal in File No. S-18380 from the Superior Court of the State of Alaska, Third Judicial District, Kodiak, Stephen B. Wallace, Judge. Appeal in File No. S-18450 from the Superior Court of the State of Alaska, Fourth Judicial District, Fairbanks, Earl A. Peterson, Judge.

Appearances: Karen L. Lambert, Lambert Law LLC, Kodiak, for Estate of Abad. Heather M. Brown, Franich Law Office, LLC, Fairbanks, for Estate of Boatner. Laura Fox, Senior Assistant Attorney General, Anchorage, and Treg R. Taylor, Attorney General, Juneau, for State of Alaska.

Before: Maassen, Chief Justice, and Carney, Borghesan, and Henderson, Justices. [Pate, Justice, not participating.]

BORGHESAN, Justice.

# I.     INTRODUCTION

Under Alaska's probate code the deadline for filing a claim against a decedent's estate depends on when the claim arose. For claims arising "before the death of the decedent, . . . whether due or to become due, absolute or contingent," the creditor must file within four months after the representative of the estate first published notice to creditors.[1] For claims arising "at or after the death of the decedent," the creditor must file within four months after the claim arose.[2] The question in these consolidated appeals is which deadline applies to the State's claim against the decedent's estate for reimbursement for Medicaid services provided to the decedent while alive.

We hold that Medicaid estate recovery claims arise before death and therefore must be filed within four months after notice to creditors. Although the State may not pursue these claims until after the Medicaid beneficiary has died, these claims arise when Medicaid services are provided, not when the claims become enforceable.

## II. FACTS AND PROCEEDINGS

### A. Statutory Framework

"The Medicaid program is 'a cooperative federal-state partnership under which participating states provide federally-funded medical services to needy individuals.' "[3] In determining who qualifies for Medicaid, federal law excludes the value of a person's home.[4] As a result some people receive Medicaid services despite owning a valuable asset. Congress addressed this "anomaly" by authorizing states to

---

[1] AS 13.16.460(a)(1).

[2] AS 13.16.460(b)(1).

[3] *Smart v. State, Dep't of Health & Soc. Servs.*, 237 P.3d 1010, 1012 (Alaska 2010) (quoting *Hidden Heights Assisted Living, Inc. v. State, Dep't of Health & Soc. Servs.*, 222 P.3d 258, 261 (Alaska 2009)).

[4] The Medicaid Act generally excludes an individual's principal residence for purposes of calculating Medicaid eligibility. *West Virginia v. U.S. Dep't of Health & Hum. Servs.*, 289 F.3d 281, 284 & n.3 (4th Cir. 2002) (citing 42 U.S.C. §§ 1382b(a)(1), 1396a(a)(10)(A)(i)(II), 1396a(a)(10)(A)(ii)(V), 1396a(a)(10)(C)(i)(III)).

seek reimbursement for the cost of certain Medicaid services from the estates of deceased beneficiaries.[5] Estate recovery was initially optional for state Medicaid programs.[6] But in the face of rapidly escalating Medicaid costs, Congress amended the law to require states to conduct estate recovery.[7] Because the State of Alaska has chosen to participate in Medicaid, it is obliged to comply with this federal statutory requirement.[8]

Accordingly the Alaska Legislature enacted AS 47.07.055, authorizing the State's Division of Health Care Services to seek reimbursement from the estates of deceased Medicaid recipients. Under this statute, "after an individual's death, the individual's estate is subject to a claim for reimbursement for [Medicaid] payments made on behalf of the individual . . . to the extent that those services were provided when the individual was 55 years of age or older."[9] The claim "may be made only after the death of the individual's surviving spouse, if any," and only if the individual has no surviving child who is younger than 21, blind, or totally and permanently disabled.[10] Regulations adopted under AS 47.07.055 provide that the State will pursue estate recovery claims only if "the potential recovery amount would result in twice the administrative and legal cost of pursuing the claim, with a minimum pursuable net

---

[5] *Id.* at 284.

[6] *Id.*

[7] *See* Omnibus Budget Reconciliation Act of 1993, Pub. L. No. 103–66, § 13612, 107 Stat. 312, 627-28 (codified at 42 U.S.C. § 1396p(b)(1)).

[8] *Smart*, 237 P.3d at 1012 (quoting *Hidden Heights*, 222 P.3d at 261).

[9] AS 47.07.055(e). Only certain kinds of services, such as "services received while an inpatient in a nursing facility" and "home and community-based services provided through waiver," give rise to a claim for reimbursement by the State. AS 47.07.055(e)(1)-(2).

[10] 42 U.S.C. § 1396p(b)(2)(A); AS 47.07.055(f).

amount of $10,000."[11]   The State may also waive estate recovery where it would cause undue hardship.[12]

**B.      Abad Proceedings**

Fe Perez Abad passed away on August 19, 2020 after receiving Medicaid home and community-based services.  Her daughter opened an informal probate case approximately two months later and was appointed the personal representative of Abad's estate.  Abad's estate issued its first notice to creditors on October 19, 2020.  On December 30, 2020 — less than four months after the estate published its first notice to creditors, but more than four months after Abad's death — the State filed a claim against the estate for $200,621.62 in Medicaid reimbursement.  The estate disallowed the State's claim.

The State then petitioned the superior court to allow its Medicaid reimbursement claim.  The estate objected, arguing the claim was time-barred.  The estate reasoned that because the claim could be asserted only against Abad's estate, and not against Abad herself while alive, the claim arose at the time of Abad's death for purposes of AS 13.16.460.  Because the claim had not been filed within four months of her death, the estate argued, it was untimely.  The State argued that its claim arose before Abad's death, triggering the "before death" notice-based filing deadline under AS 13.16.460.  Accordingly, the State argued, it was timely because it was filed within four months of when notice to creditors was first published.

The superior court agreed with the estate, holding that the State's Medicaid recovery claim did not arise during Abad's lifetime and should have been brought within four months of her death.  Noting that no published Alaska decision addressed the interaction of AS 47.07.055 and AS 13.16.460, the superior court

---

[11]      7 Alaska Administrative Code (AAC) 160.210(c).

[12]      7 AAC 160.240(a)-(b).

examined decisions from the Nebraska, Iowa, and Washington supreme courts. The superior court also rejected the State's policy argument that a deadline tethered to death, rather than notice to creditors, would hamper the State's ability to pursue estate recovery in accordance with federal law.

The State filed a motion for reconsideration, which the superior court denied.

The State then appealed.

### C. Boatner Proceedings

Sandra Lee Boatner passed away on September 1, 2020. During her life she was the beneficiary of Medicaid services. Roughly two months after her death, David E. Cook opened an informal probate case; he was appointed the personal representative of her estate. The estate issued its first notice to creditors on December 22, 2020. On March 24, 2021 — less than four months after the estate published its first notice to creditors, but more than four months after Boatner's death — the State filed a claim against the estate for $300,647.29 in Medicaid reimbursement.

In May of that year the estate disallowed the claim, maintaining that it was not timely filed. The State petitioned the superior court to permit its claim against Boatner's estate, asserting that its claim was timely filed under AS 13.16.460(a)(1). The parties each moved for summary judgment. Their arguments paralleled those in the *Estate of Abad* litigation.

A standing master recommended that the superior court adopt the State's reading of Alaska's probate filing deadlines. The standing master acknowledged that Medicaid estate recovery claims become enforceable after death. But because these claims concerned medical expenses that Boatner incurred during her lifetime, the standing master concluded they arose before her death. The superior court adopted the standing master's recommendation.

Boatner's estate filed a motion for reconsideration, and the superior court denied it. The court explained that the State seeks to recover debt arising from medical expenses, and that "[a]ll medical expenses occur while the person is still deemed alive." The court further explained that the provision of AS 47.07.055(a) limiting recovery until after the recipient's death "does not shift the accrual date" or "change the fact that the person still received that care during her lifetime." Rather, the court described this provision as "an offer of grace for the benefitted person to live out her life without worry of being refused care for lack of payment."

Boatner's estate appealed. We consolidated the Boatner estate's appeal with the Abad estate's appeal for purposes of oral argument and decision.

## III.  DISCUSSION

These two cases present a single question of statutory interpretation: For purposes of the probate code's claim filing deadlines under AS 13.16.460, does a Medicaid estate recovery claim under AS 47.07.055(e) arise "before death" or "at or after death"? The answer determines the deadline for the State to present its claim for reimbursement to the estate.

Statutory interpretation is a question of law that we review de novo.[13] "We apply our independent judgment to the interpretation of Alaska statutes and will interpret statutes 'according to reason, practicality, and common sense, taking into account the plain meaning and purpose of the law as well as the intent of the drafters.' "[14] "Statutory interpretation begins with the plain meaning of the text, but it does not stop there."[15] Instead, we subscribe to a "sliding scale approach to statutory

---

[13]  *Rosauer v. Manos*, 440 P.3d 145, 147 (Alaska 2019).

[14]  *In re Est. of Rodman*, 498 P.3d 1054, 1062 (Alaska 2021) (quoting *Taylor v. Wells Fargo Home Mortg.*, 301 P.3d 182, 188 (Alaska 2013)).

[15]  *Am. Marine Corp. v. Sholin*, 295 P.3d 924, 926 (Alaska 2013) (citing *State, Com. Fisheries Entry Comm'n v. Carlson*, 270 P.3d 755, 762 (Alaska 2012)).

interpretation,"[16] under which "[t]he plainer the statutory language is, the more convincing the evidence of contrary legislative purpose or intent must be."[17]

We conclude that Medicaid estate recovery claims arise before death for purposes of the probate code's filing deadline. This conclusion is supported by statutory text, the underlying legislative purpose of the Medicaid estate recovery statute, and the weight of precedent from other jurisdictions.

**A.    Statutory Text Suggests That Medicaid Estate Recovery Claims Arise Before A Beneficiary's Death Even Though They Cannot Be Enforced Until After Death.**

The estates emphasize the text of the estate recovery statute. They argue that because the State may bring a Medicaid estate recovery claim only "after an individual's death" and only against the deceased individual's estate,[18] the State's claim for reimbursement arises "at or after" the individual's death.[19] The State instead emphasizes the text of the probate code. It points out that the probate code refers to when claims "arise," rather than when they "accrue," and recognizes that claims arising before death include those that are "due or to become due, absolute or contingent."[20] Accordingly the State argues that a Medicaid estate recovery claim arises when the services are provided to the beneficiary, even if it is not enforceable and therefore remains contingent until the beneficiary's death. The State also asserts that other language in the probate code suggests that claims arising "at or after" death are related

---

**16**     *McDonnell v. State Farm Mut. Auto. Ins. Co.*, 299 P.3d 715, 721 (Alaska 2013) (citing *Peninsula Mktg. Ass'n v. State*, 817 P.2d 917, 922 (Alaska 1991)).

**17**     *Id.* (alteration in original) (quoting *Gov't Emps. Ins. Co. v. Graham-Gonzalez*, 107 P.3d 279, 284 (Alaska 2005)).

**18**     AS 47.07.055(e) ("[A]fter an individual's death, the individual's estate is subject to a claim for reimbursement . . . .").

**19**     AS 13.16.460(b).

**20**     AS 13.16.460(a).

to estate administration, rather than to obligations incurred by the beneficiary while alive. The State's position is ultimately more persuasive.

The probate code's use of "arise" rather than "accrue" does not, on its own, resolve the dispute. According to the State, a claim *arises* when the underlying events take place, but a claim only *accrues* when it is enforceable. Yet the dictionary does not suggest such a clear distinction between these terms.[21] The Revised Fourth Edition of Black's Law Dictionary, which would have been available to the legislature when it enacted AS 13.16.460, states that "[a] cause of action 'accrues' when a suit may be maintained thereon" or "[w]henever one person may sue another."[22] The entry for "arise" notes that the term is not a synonym for "accrue."[23] It defines "arise" as "[t]o spring up, originate, to come into being or notice, to become operative, sensible, visible, or audible; to present itself."[24] This definition tends to support the State's position, as the Medicaid estate recovery claim "came into being" or "originated" with the provision of Medicaid services. But Black's Law Dictionary also states that a cause of action or suit " 'arises,' so as to start running of limitation, when a party has a right to apply to the proper tribunal for relief."[25] Because AS 13.16.460 is a statute of limitation, this second definition of "arise" is more on-point and therefore tends to support the estates' position.

---

[21] "In the absence of a [statutory] definition, we construe statutory terms according to their common meaning[;] [d]ictionaries provide a useful starting point for this exercise." *State v. Recall Dunleavy*, 491 P.3d 343, 359 (Alaska 2021) (alterations in original) (quoting *Alaska Pub. Def. Agency v. Superior Ct.*, 450 P.3d 246, 253 (Alaska 2019)).

[22] *Accrue*, BLACK'S LAW DICTIONARY (4th ed. 1968).

[23] *Arise*, BLACK'S LAW DICTIONARY (4th ed. 1968).

[24] *Id.*

[25] *Id.*

However, the legislature's decision to explain that a claim may arise whether it is "due or *to become* due" and whether "absolute or *contingent*" favors the State's position.[26] These qualifiers suggest that the legislature meant that a claim might arise even before the claimant could enforce it. A "contingent claim" is, according to Black's, "[o]ne which has not accrued and which is dependent on some future event that may never happen."[27] This language supports the conclusion that a claim may "arise" before it becomes enforceable. A Medicaid estate recovery claim, though contingent and unenforceable before the beneficiary's death and the death of a surviving spouse, can therefore fall in the category of claims arising before death.

The probate code's definition of "claim" reinforces the conclusion that Medicaid estate recovery claims arise before death for purposes of AS 13.16.460(a)(1)'s filing deadline. The probate code defines "claims" in a way that mirrors AS 13.16.460's distinction between claims arising before death and claims arising "at or after" death.[28] " '[C]laims,' in respect to estates of decedents," include both "liabilities of the decedent . . . , whether arising in contract, in tort, or another way, and liabilities of the estate that arise *at or after* the death of the decedent . . . , including funeral expenses and expenses of administration."[29] A Medicaid estate recovery claim is akin to a contract claim: in exchange for receiving services, the beneficiay incurs a contingent obligation to repay after death, with funds from the beneficiary's estate. It

---

[26]    AS 13.16.460(a)(1) (emphasis added). These qualifiers are used both for claims that arose before death under AS 13.16.460(a)(1) and for claims that arise at or after death under AS 13.16.460(b)(1).

[27]    *Contingent Claim*, BLACK'S LAW DICTIONARY (4th ed. 1968).

[28]    AS 13.06.050 (providing definitions for AS 13.06–.36, "[s]ubject to additional definitions contained in AS 13.06–AS 13.36 that are applicable to specific provisions of AS 13.06–AS 13.36").

[29]    *Id.* (emphasis added).

is far less similar to "funeral expenses and expenses of administration," the kinds of claims the statute offers as examples of claims arising at or after death.[30]

Secondary sources support this distinction and confirm that Medicaid estate recovery claims fall in the category of claims arising before death for probate purposes. Richard Wellman's Uniform Probate Code Practice Manual, which we have found useful in the past,[31] explains that claims that "arise at or after death" are "commonly classified as expenses of administration."[32] The Stein on Probate treatise agrees, explaining that "[b]ecause claims arising after death usually originate from acts by the personal representative, they occur primarily during administration."[33]

The Stein treatise illustrates the distinction between claims arising before death and claims arising after death with helpful examples.[34] Before-death claims include "last illness charges, charges for illness during the year immediately preceding death, personal service charges during lifetime, recovery on warranties, liability as a surety or guarantor, claims of the state or county for support in state or county mental institutions, equitable claims, and other general contract claims."[35] Claims that arise after death include "accountants' fees, representative's and attorneys' fees, repair and maintenance expenses of property of the estate, insurance premiums, storage costs,

---

[30]  AS 13.06.050(6).

[31]  *See In re Est. of Baker*, 386 P.3d 1228, 1234 (Alaska 2016) (acknowledging that "members of the Alaska House Judiciary Committee found Richard Wellman's writings on the Uniform Probate Code to be helpful in clarifying the concepts underlying the code," and citing to Richard Wellman's Uniform Probate Code Practice Manual).

[32]  1 UNIFORM PROBATE CODE PRACTICE MANUAL 343 (Richard V. Wellman, ed., 2d ed. 1977).

[33]  1 STEIN ON PROBATE, § 6.01(c), at 117 (Robert A. Stein, ed., 3d ed. 1995).

[34]  *Id*.

[35]  *Id*.

platting costs, and charges for all services rendered to the personal representative for the estate."[36] Medicaid estate recovery claims, which are based on healthcare costs incurred prior to a recipient's death rather than estate administration expenses, are similar to the kinds of claims that the treatise describes as claims arising before death.

**B.** **Classifying Medicaid Estate Recovery Claims As Claims Arising Before Death Is More Consistent With Legislative Purpose.**

The parties argue that their respective interpretations are more consistent with the purposes underlying the probate code and the Medicaid statutes. The estates argue that classifying Medicaid estate recovery claims as claims arising at or after death will cause the claims to be asserted earlier, furthering the goal of speedier estate administration. The State does not agree that classifying probate claims this way will necessarily expedite probate administration. It also argues that subjecting Medicaid estate recovery claims to a potentially more restrictive filing deadline is inconsistent with the priority the Legislature has assigned these claims vis-à-vis the claims of other creditors.[37] Again we find the State's arguments on these points more persuasive.

Alaska's probate statutes are intended to "promote a speedy and efficient system for liquidating the estate of the decedent"[38] and "facilitate the prompt settlement of estates,"[39] among other purposes. Abad's estate contends that treating Medicaid estate recovery claims as arising at or after death would expedite probate administration. Generally, the decedent's heirs and creditors have up to three years after death to open a probate proceeding.[40] The estates argue that if the State's claim arises "at or after"

---

[36]    *Id.*

[37]    *See* AS 13.16.470(a); AS 47.07.055(g).

[38]    AS 13.06.010(b)(3).

[39]    AS 13.16.005.

[40]    AS 13.16.040(a). *But see* AS 12.16.040(a)(1)-(5) (providing exceptions to the general rule).

death, then its claim will expire unless filed within four months after death.[41] If by that time no one has stepped forward to administer the decedent's estate, then the State will be forced to seek appointment as the personal representative of the estate in order to preserve its claim.[42] Accordingly, the estates argue, the probate process will unfold more quickly, which is more consistent with the goal of the probate code.

Though the estates' theory may be correct in some cases, it is not universally true. In other cases treating Medicaid estate recovery claims as arising at or after death could prolong estate administration. For example, a claim cannot be made against the decedent's estate if there is a surviving spouse or child under 21.[43] If a Medicaid estate recovery claim does not arise until it becomes enforceable, then the claim could arise several years after the beneficiary's death, upon the death of the surviving spouse or the 21st birthday of a child. If the estate were still in the process of probate, the State would have four more months from that point to present its claim, even if all other creditors' claims had been filed long ago. For that reason classifying Medicaid estate recovery claims as arising at or after death does not necessarily mean that the probate process will unfold more quickly. The uncertain and marginal effect on the speed of probate administration is not a persuasive reason to interpret Medicaid estate recovery claims as arising at or after death when the statutory text clearly places them in the category of claims arising before death.

The State argues that classifying Medicaid estate recovery claims as arising before death furthers the underlying purpose of estate recovery: "recovering from those with an ability to pay so as to make future funds available for those having

---

[41] See AS 13.16.460(b).

[42] See AS 13.16.065(a) (establishing order of priority for personal representative of estate, with creditor lowest priority).

[43] See 42 U.S.C. § 1396p(b)(2); AS 47.07.055(f).

the most need."[44] Abad's estate essentially argues that federal legislative intent is irrelevant because the Alaska legislature passed AS 47.07.055 to comply with federal requirements and access federal Medicaid funding — not necessarily to recover costs. But in order to access federal funding, Alaska needed a program that effectuates the federal act.[45] We must assume that legislature's purpose was consistent with that of the federal law it implemented.

Interpreting Medicaid estate recovery claims as arising at or after death would undermine this legislative purpose by making it more expensive to pursue estate recovery. It is true, as the estates point out, that the State could prevent its claim from expiring four months after death by applying to be the personal representative within that time. But doing so would require the State to incur additional costs in administering

---

[44] *Est. of Melby v. Lohman*, 841 N.W.2d 867, 875-76 (Iowa 2014) ("Our interpretation creating the debt immediately upon provision of assistance rather than at the death of the recipient, and allowing recovery from the corpus of the trust, is consistent with the Medicaid program's goal . . . ."); *see also Belshe v. Hope*, 38 Cal. Rptr. 2d 917, 925 (Cal. App. 1995) (explaining that Medicaid estate recovery "furthers the broad purpose of providing for the medical care of [a state's] needy; the greater amount recovered by the state allows the state to have more funds to provide future services"); Jon M. Zieger, *The State Giveth and the State Taketh Away: In Pursuit of a Practical Approach to Medicaid Estate Recovery*, 5 ELDER L.J. 359, 374 (1997) ("The foremost consideration behind estate recovery is the reduction of the overall cost of Medicaid to states by recouping some portion of Medicaid expenditures.").

[45] *See* ch. 102, § 1, SLA 1994 (stating that purpose of the act was to, among other things, "bring the state into compliance with federal law with respect to the recovery of Medicaid payments from the estates and trusts of individuals under certain circumstances"); Sen. Steve Frank, Sponsor Statement for S.B. 366, 18th Leg. 2d Sess. (Mar. 26, 1994) ("In large part, the statutory changes proposed in this bill relating to . . . estate recoveries by Medicaid, and Medicaid-qualifying trusts are required by the federal Omnibus Budget Reconciliation Act of 1993 . . . , and DHSS will face a penalty — loss of federal financial Medicaid participation — if legislation is not adopted by July 1, 1994."); 42 U.S.C. § 1396p(b)(1)(B) ("In the case of an individual who was 55 years of age or older when the individual received such medical assistance, the State shall seek adjustment or recovery from the individual's estate . . . .").

the decedent's estate. These additional costs would diminish the State's net recovery, undermining the goal of recovering funds to be made available for other needy people.

Classifying Medicaid estate recovery claims as arising at or after death would also subject the State to a risk of nonrecovery not faced by other creditors. One reason creditors whose claims arise before death are given four months from the date on which the estate publishes notice to creditors is that these creditors may not be aware that the person who owes them money has died:

> It is foreseeable that holders of [pre-death] contractual claims may be unaware of the death of the decedent and thus could lose their right to assert their claim due to no fault of their own, unless notice is given to them . . . . On the other hand, individuals with claims arising after death, largely due to expenses arising out of the administration of the estate, do not encounter similar difficulties. Because [the latter group of creditors] know[s] of the death of the decedent, [the state probate statute] does not require notice and sets forth only a four-month limitation period from the time the claim arose.[46]

The State concedes that administrative processes make it more likely than other creditors to learn of a Medicaid beneficiary's death. But if Medicaid is not providing services to the beneficiary at the time of death, it may not immediately become aware of the death. Applying the deadline for claims arising at or after death risks precluding the State from pursuing legitimate claims when other creditors still can, with no clear policy justification.

Subjecting the State to these costs and risks would be directly at odds with the legislature's decision to give Medicaid estate recovery claims priority over other creditors' claims. The legislature designated Medicaid estate recovery claims as "debts

---

46      *In re Est. of Hadaway*, 668 N.W.2d 920, 924 (Minn. App. 2003).

with preference."[47] An estate is required to pay such debts before "all other claims" — excluding estate administration, funeral expenses, and a few other debt categories.[48] Creditors whose claims are based on obligations incurred by the decedent while alive (like doctors, lenders, or business partners) are subject to the deadline for claims arising before death: four months after notice to creditors is published, or three years after death if no notice is published.[49] Medicaid estate recovery claims are also based on obligations incurred by the decedent while alive. Making these claims subject to a different and sometimes more restrictive deadline (four months after death if the decedent had no surviving spouse or qualifying child) than other creditors' claims would be inconsistent with the legislature's decision to give Medicaid claims priority.

In light of the overall purpose of Medicaid estate recovery claims and the express priority these claims are assigned, it is more logical to classify these claims as arising before death.

C.    **Decisions From Other States Support The Conclusion That Medicaid Estate Recovery Claims Arise Before Death.**

The parties cite opinions from other state appellate courts supporting their respective positions on whether a Medicaid estate recovery claim arises before or after death. These opinions fall into three sets: (1) opinions deciding when claims that become enforceable after death arise for purposes of the probate code; (2) opinions deciding when Medicaid estate recovery claims arise generally; and (3) opinions deciding when Medicaid estate recovery claims arise for purposes of probate filing deadlines. On balance, these decisions support the conclusion that Medicaid estate recovery claims arise before death for purposes of probate claim deadlines.

---

[47]    AS 47.07.055(g) ("For purposes of AS 13.16.470, the claims authorized under this section are debts with preference under the laws of the state.").

[48]    AS 13.16.470(a).

[49]    AS 13.16.460(a)(1)-(2).

-15-                                                                7678

The first set of decisions establishes that, generally speaking, claims against an estate can arise before death even if they are only enforceable after death. In *In re Estate of Hadaway*, a Minnesota court discussed a claim based on a divorce settlement agreement that the decedent had entered into during his life, but that was payable only after he died.[50] The court concluded that the claim for payment arose during the decedent's life for the purpose of Minnesota's probate claim deadlines,[51] which are similar to Alaska's.[52] "Simply because the payment was made absolute when decedent died," the court held, "it does not follow that the contractual duty necessarily *arose* at the time of decedent's death. Rather, it is apparent that from the time of the settlement agreement . . . decedent was obligated [to fulfill his contract obligations]."[53]

*Estate of Evitt v. Hiatt* also concerned a divorce settlement agreement executed years before death but not enforceable until after death.[54] The Arizona Court of Appeals, applying Arizona's probate code,[55] held "that when a person enters into a contract obligating him to act while living to ensure a payment to the claimant at or after his death, a claim for breach arises before the decedent's death."[56] And *Ader v.*

---

[50]  668 N.W.2d at 920-21.

[51]  *Id.* at 923.

[52]  Minnesota Statutes §§ 524.3–803(a) and (b)(2), like AS 13.16.460(a) and (b)(2), require creditors whose claims against an estate "arose before the death of the decedent" to file within four months after a notice to creditors and claims that "arise at or after the death of the decedent" to be filed within four months after they arise.

[53]  *In re Est. of Hadaway,* 668 N.W.2d at 923 (emphasis in original).

[54]  429 P.3d 1146, 1147-48 (Ariz. App. 2018).

[55]  Ariz. Rev. Stat. Ann. § 14-3803 likewise assigns a different filing deadline to creditors whose claims arose "before the death of the decedent" than to those whose claims "arise at or after the death of the decedent."

[56]  *Est. of Evitt*, 429 P.3d at 1147; *see also Spohr v. Berryman*, 589 So. 2d 225, 227-28 (Fla. 1991) (holding that a claim against the decedent's estate based on a

*Estate of Felger* distinguished the terms "accrue" and "arise" when extending this logic to fraud claims.[57] While "[a] cause of action accrues . . . when one party is able to sue another," the *Felger* court explained, "in the context of a nonclaim statute, 'arise' refers to the decedent's act or conduct upon which a claim is based."[58]

These cases support the idea that when a claim arises, for purposes of the probate code's claim filing deadlines, depends on the timing of the events that give rise to the claim, rather than when that claim becomes enforceable.

The second set of decisions addresses the distinct but related issue of when a claim for Medicaid estate recovery arises in general.[59] Most of these decisions support the State's view that Medicaid reimbursement claims arise when caretakers provide services rather than when a recipient passes away.

Most jurisdictions that have addressed the issue have concluded that Medicaid estate recovery claims arise when caretakers provide services to a living Medicaid recipient. In *Estate of Melby v. Lohman*, for example, the Iowa Supreme

---

divorce agreement "arose before the death of the decedent" because the claim "was based upon an agreement which was made many years before [the decedent's] death").

[57] 375 P.3d 97, 103-04 (Ariz. App. 2016).

[58] *Id*. at 104 (quoting *Gust, Rosenfeld & Henderson v. Prudential Ins. Co. of Am.,* 898 P.2d 964, 966 (Ariz. 1995)).

[59] Two cases the estates cite — *In re Est. of Baker*, 627 S.W.3d 523 (Tex. App. 2021) and *In re Est. of Hutchinson*, 577 P.2d 1074 (Alaska 1978) — are inapposite. *In re Est. of Baker* distinguishes two kinds of claims: (1) an equitable right of reimbursement arising from the dissolution of marriage and (2) a debt to one's spouse. *See* 627 S.W.3d at 532. It does not discuss "reimbursement" in the Medicaid recovery context. *Id.* at 527 ("The right of reimbursement is not an interest in property or an enforceable debt, per se, but an equitable right which arises upon dissolution of the marriage."). *In re Est. of Hutchinson* examines whether family allowances qualify as claims against an estate. 577 P.2d at 1074-76. It is unclear that there is any connection to the matter at hand, other than a mere reference to the definition of "claims" and the claim priority statute, AS 13.16.470(a). *Id.*

Court concluded that although the governing statute "mandat[es] the department will refrain from collecting that debt until the death of the recipient," it nonetheless "establishes a debt owed by the recipient of medical services when the services are provided."[60] Courts reached the same conclusion in Arkansas, Nebraska, and Washington.[61]

Only one state, California, appears to have reached the opposite conclusion outside of the probate claim deadline context. The holding of *Kizer v. Hanna* — that California's Medicaid recovery statute applied to care that took place

---

[60] 841 N.W.2d 867, 877 (Iowa 2014). Abad's estate attempts to distinguish Iowa's Medicaid recovery statute from Alaska's, pointing out that the Iowa statute conceptualizes Medicaid recovery as debt collection rather than reimbursement. *Compare* Iowa Code § 249A.53(2) (formerly Iowa Code § 249A.5(2)) ("The provision of medical assistance to an individual . . . creates a debt due the department from the individual's estate . . . ."), *with* AS 47.07.055(e) ("[T]he individual's estate is subject to a claim for reimbursement for medical assistance payments . . . ."). But the slightly different language used does not seem to indicate a different underlying legislative intent. The two statutes arise from the same federal mandate to implement state Medicaid recovery programs, and therefore share the same purpose. *See Est. of Melby*, 841 N.W. at 875-76 ("Our interpretation creating the debt immediately upon provision of assistance rather than at the death of the recipient, and allowing recovery from the corpus of the trust, is consistent with the Medicaid program's goal of recovering from those with an ability to pay so as to make future funds available for those having the most need.").

[61] *See, e.g.*, *Est. of Wood v. Ark. Dep't of Hum. Servs.*, 894 S.W.2d 573, 576 (Ark. 1995) (explaining that the relationship created by Arkansas's estate recovery statute "was as if [the recipient] had a loan from [the department] to be repaid from the assets of her estate"); *Est. of Reimers v. Neb. Dep't of Health & Hum. Servs.*, 746 N.W.2d 724, 728 (Neb. 2008) ("While the debt arising under [the estate recovery] statute accrues during the recipient's lifetime, it is held in abeyance for payment until the recipient's death."); *In re Est. of Burns*, 928 P.2d 1094, 1099 (Wash. 1997) ("The precipitating event [of a Medicaid reimbursement claim] is . . . the receipt of the benefits giving rise to the contingent indebtedness, and not the creation of the decedent's estate.").

before the statute went into effect[62] — is irrelevant here. But the *Kizer* court reached that conclusion by reasoning that "[t]he plain language of the statute dictates that the [state agency's] right to reimbursement is against the recipient's *estate*. Consequently, the [state agency's] right to reimbursement arises, if at all, at the time of the recipient's death."[63]

The third set of decisions addresses the precise question at hand: For purposes of probate code filing deadlines, do Medicaid estate recovery claims arise before death, or "at or after" death? These two opinions — *Estate of Hooey v. Mowbray*[64] and *Estate of Tvrz v. Tvrz*[65] — reached opposite conclusions.

In *Estate of Hooey* the Supreme Court of North Dakota held that "[t]he requirement that the [state agency] refrain from pursuing its claim until after the death of the recipient does not define when that claim arose."[66] Rather, the court viewed this requirement as one of several contingencies that must occur before the government may

---

[62]    767 P.2d 679, 686 (Cal. 1989).

[63]    *Id*. at 683 (emphasis in original). Boatner's estate cites to another California decision, *Maxwell-Jolly v. Martin*, for the proposition that the reimbursement right is strictly a statutory right to recover from a decedent recipient's estate and is not based on any promise or agreement to repay by the still-living recipient. 129 Cal. Rptr. 3d 278 (Cal. App. 2011). The *Maxwell-Jolly* court relied on the California Supreme Court's reasoning in *Kizer* in reaching that conclusion. *Id*. at 288. But the majority of jurisdictions have taken the opposite approach, and we find the reasoning of those courts more persuasive.

[64]    521 N.W.2d 85 (N.D. 1994).

[65]    620 N.W.2d 757 (Neb. 2001), *superseded by statute*, 2001 Neb. Laws, L.B. 257, § 1, Neb. Rev. Stat. § 68–1036.02(2) (2001), *as recognized in Est. of Cushing v. Neb. Dep't of Health & Hum. Servs.*, 810 N.W.2d 741, 745 (Neb. 2012) ("*In re Estate of Tvrz* is no longer authoritative on when DHHS' claim arises.").

[66]    521 N.W.2d at 86 (citations omitted).

-19-                                                    7678

recover Medicaid funds.[67] The court reasoned that "the obligation to repay, if any, arises upon receipt of the benefits, i.e., prior to the decedent's death," whereas the decedent's death and the death of any surviving spouse merely determined when the government's "right to recover ripens."[68]

In *Estate of Tvrz* the Supreme Court of Nebraska adopted the opposite interpretation of Nebraska's Medicaid estate recovery statute.[69] That court deemed it significant that Nebraska's statute "specifically provide[d] that '[n]o debt to the department shall exist' if the recipient is survived by a spouse or by a child who is under the age of 21, blind, or totally and permanently disabled."[70] The court reasoned that "the *existence* of indebtedness on the part of a [Nebraska] recipient's estate depends upon factors which can be determined only after the recipient's death" and that a Nebraska Medicaid estate recovery claim therefore arises only at or after death.[71]

Despite this seemingly even tally, the scale ultimately tips in the State's favor. One year after the *Estate of Tvrz* decision, the Nebraska legislature effectively abrogated it by amending Nebraska's Medicaid estate recovery statute to provide that the debt "arises during the life of the recipient but shall be held in abeyance until death of the recipient."[72] The Nebraska legislature's response to the court's ruling suggests

---

**67**　*See id*. at 86-87 (quoting *Dep't of Pub. Welfare v. Anderson*, 384 N.E.2d 628, 633-34 (Mass. 1979)).

**68**　*Id*. at 87 (quoting *Anderson*, 384 N.E.2d at 633-34).

**69**　620 N.W.2d at 762-63.

**70**　*Id*. (quoting former Neb. Rev. Stat. § 68–1036.02(2)).

**71**　*Id*. at 763 (emphasis in original).

**72**　*Est. of Cushing v. Neb. Dep't of Health & Hum. Servs.*, 810 N.W.2d at 745-46 (quoting Neb. Rev. Stat. § 68–919) (holding, in light of statutory change, that Medicaid estate recovery claim arose before beneficiary's death).

that subjecting Medicaid estate recovery claims to the "before death" probate claim deadline is more consistent with the underlying purpose of the program.

Overall, the decisions from other jurisdictions confirm our analysis of the text and purpose of Alaska's probate and Medicaid statutes. A Medicaid estate recovery claim arises before the death of the decedent. Such a claim is timely if presented to the estate within four months after notice to creditors is first published, or within three years of death if no notice is published.

## IV. CONCLUSION

For the reasons above, we REVERSE the superior court's decision in *Estate of Abad* and AFFIRM the superior court's decision in *Estate of Boatner*.